# Birmingham National Bank *v.* Roden.

*Bill to Compel Specific Performance of Contract to Issue Certificates of Stock.*

1. *Specific performance or compensation in lieu thereof.*—Upon the refusal of a corporation to issue certificates of stock to a subscriber entitled to receive them, he may in equity, enforce specific performance or if the incorporation is unable to perform the contract, he may have compensation in damages.

2. *Plea of ultra vires no defense to such suit.*—In such case a plea by the corporation that all the stock authorized by its charter had been issued, presents no defense to the complainant's right to compensation prayed for as alternative relief.

3. *Evidence of subscription for stock.*—Where the proof shows that the complainant was one of the original promoters and subscribers to the capital stock of a banking corporation, that he paid fifty per cent. of his subscription and took receipts therefor, stating certificates would be issued when the balance was paid; that he gave notes for his subscription to the president of the bank who said he would arrange for the money; that these notes had been transferred to the bank with full knowledge of their consideration and that he paid these in ᴉart and the balance were renewed; that the bank had brought suit on these notes, although the entire stock had been issued and complainant's name did not appear as the owner of stock, this constitutes the complainant a stock holder and entitles him to a decree for compensation for the value of the stock subscribed for and such dividends as it had earned.

APPEAL from City Court of Birmingham.

Heard before Hon. H. A. SHARPE.

The bill in this case as originally filed, prayed that the bank be compelled to issue to complainant forty shares of its stock for which he had subscribed. The prayer of the bill was afterwards amended, praying that if the stock could not be issued the complainant might have compensation in lieu thereof.

The defendant amended its answer by a plea setting up the fact that its entire capital stock had been taken up and certificates therefor issued to holders in good faith, and the court sustained a demurrer to this plea.

The court decreed that complainant was entitled to compensation in lieu of the stock at its market value, to all dividends on the forty shares earned since the organization of the defendant, and interest on these dividends, less the

amount due on the notes for subscription. From this de-
cree the defendant appeals.

MOUNTJOY & TOMLINSON, and WEBB & TILLMAN, for appel-
lants, made the following points : That Roden gave his
notes for the subscription instead of money which was a
violation of the law, citing Rev. State. U. S. Sec. 5140 ;
Bishop on Cont. § 477; 1 Pomeroy Eq. 438; 2 *Ib.* 434; *Ib.* 456;
*Woods v. Armstrong*, 54 Ala. 150 ; that there was an adequate
remedy at law : Cook on Stock, § 293 ; *Bank v. Curts*, 99
Penn. St. 344 ; 83 Ala. 565 ; 13 Ala. 601 ; 84 Ala. 608 ; Fry on
Spec. Perf. § 24 ; Pomeroy Eq. §§ 132,   133,   216,   424 ;
1 Brick. Dig. p. 639, § 3, and numerous other authorities.

R. H. PEARSON, and A. W. COCHRANE, for appellee, on the
equity of the bill, cited *Davenport v. Tel.* 93 U. S. 370 ;
*Ins. Co. v. Bank*, 63 Ala. 593 ; Cook on Stock, §§ 390, 391,
234 ; Morawetz on Corp. § 339 ; 3 Pom. Eq. § 1410 ; *Higley
v. Powell*, 90 Ala. 103 ; 17 Wall. 619 ; 96 U. S. 640; that the bank
is estopped from setting up the illegality of the transaction :
1 Dan. Ch. Pr. 714 ; *Sawyer v. Hook*, 17 Wall. 619 ; *Lehman
v. Warner*, 61 Ala. 455 ; 85 *Ib.* 401 ; 70 *Ib.* 120 ; 5 *Ib.* 787 ;
10 *Ib.* 82, and numerous other authorities.

COLEMAN, J.—The object of the bill as originally framed
was to compel the defendant bank to register the plaintiff as
a stockholder for forty shares of stock in the bank stock-
book. After answer and plea by the bank which averred as
a defense that all the shares authorized to be issued by its
charter, had been issued, before the filing of complainant's
bill, the bill was amended so as to pray as alternative
relief, that the bank be required to pay the value of the
stock, and the dividends declared thereon, as compensa-
tion in lieu of the stock.

The respondent demurred to the bill, upon the ground
that plaintiff's remedy at law was full and adequate ; and
by answer as a defense alleged that plaintiff's subscription
contract for stock was illegal and void in this : that the
agreement between Roden the subscriber for the stock, and
Jno. W. Reed, the promoter of the corporation, and after-
wards, its president, was to the effect that the subscription
was not to be paid for in cash, as required by the statute,
but only by the notes of Roden. As a further defense the
answer averred that the bank had issued its full amount of
shares, and that any further issue would be *ultra vires.*

It sometimes happens, says Mr. Pomeroy, in his Equity

[Birmingham National Bank v. Roden.]

Jurisprudence, that certificates are issued to the wrong person without the consent or fault of the true owner. In such cases, says the author, it is well settled that although the law may give some remedy, as that of damages, equity has jurisdiction to decree that the corporation replace the stock upon its books, and issue new certificates to the original owner, or if it is unable to do this by reason of its not having, or being able to procure any shares, to pay the value of the stock.—Pom. Eq. § 1412. And in Cook on Stock and Stockholders § 579, it is declared that: "A bill in equity may be maintained by a *bona fide* purchaser of stock, against the corporation to compel a transfer of the stock upon the corporate books," and in the same work in § 74, it is said: "A subscriber for shares of stock, in case the contract of subscription was regularly entered into, may, if the corporation refuse to issue him a certificate, have his action in equity for specific performance, or he may recover of the corporation in assumpsit, the value of shares at the time of the demand."—Cook on Stock and Stockholders, § 74.

We have frequently decided that although the proof may show that the specific relief prayed for in a bill for specific performance can not be granted, the bill may be retained for compensation, if the party is entitled to relief, and the remedy at law is inadequate to afford complete justice. *Powell v. Higley*, 90 Ala. 103; *Allen v. Young*, 88 Ala. 338; *Moses v. Scott*, 84 Ala. 611; *Cowan v. Sapp*, 81 Ala. 525; *Aday v. Echols*, 18 Ala. 353.

"When the impossibility of a specific performance is disclosed at the hearing and the suit was brought by the plaintiff in ignorance of such fact, the court will award the remedy of damages."—3 Pom. Eq. § 1410.

It is very clear that when a corporation has lawfully issued the full amount of stock authorized by its charter, no court can compel a further issue. Cases sometimes arise in which a recovery in damages would fail to compensate fully one entitled to stock, and yet the court would be without power to order a further issue, on account of the fact that all the stock authorized by its charter had been issued. The rule adopted by the Massachusetts courts in such cases, it seems, is to require the corporation to issue the stock to the person entitled to it but in order to prevent an illegal over-issue it must purchase an equal amount of shares in the market, while in other States compensation may be awarded in lieu of the stock.—Cook on Stock and Stockholders, §§ 284, 390, 391, and note; *Machinist Nat. Bank v. Field*, 126 Mass. 345.

While the authorities are numerous in support of the proposition, that upon the refusal of a corporation to issue certificates of stock, to a subscriber, who is entitled to receive them, or where the shares of the proper owner have been wrongfully detained or converted by the corporation or by an individual holder, he may have his remedy by appropriate action in a court of law, it is well settled that as against the corporation he may by bill in equity enforce a specific performance by having the stock registered in his name or compel the issue of certificates of stock to him, or in the alternative if the corporation is unable to perform its contract, have his remedy by compensation in damages. The principle which accords compensation as an alternative relief on bills filed for specific performance is well recognized in this State. We are of opinion that the power of a court of equity is the better adapted to administer complete relief and justice in such cases between the parties. The overruling of respondent's demurrer to the bill of complaint was in accord with these principles, and must be sustained.

We hold also that the plea of *ultra vires*, in which it is averred that the bank had issued all the stock authorized by its charter, presented no defense as against plaintiff's right to compensation prayed for as alternative relief. The court in the case at bar awarded compensation in lieu of the stock and the plaintiff is content to take compensation, instead of the specific stock. He has not complained or appealed. If the facts stated in respondent's plea and answer, and which were intended to raise the question of the validity of the subscription contract, presented a valid defense, we are satisfied from an examination of the evidence, that the defense has not been sustained by legal proof. It is undisputed that Roden subscribed for forty shares of the stock, and was one of the subscribers who associated together for the purpose of organizing the bank. The original organization certificate in the comptroller's office of the Treasury Department shows this, and that he was a shareholder of forty shares. In the absence of evidence of forgery, fraud or mistake, we think evidence conclusive on him and the corporation, that he was a shareholder, at the time of its organization, and responsible as such to the corporation and its creditors, and was entitled to the benefits of a shareholder.—*McHose v. Wheeler*, 45 Pa. St. 40. It is true that no certificate of stock was ever issued to him, and there is no proof that his name was entered in the stock book of the company as a shareholder. Neither was in-

dispensable to constitute him a shareholder. The certificate is mere evidence that the holder thereof is a shareholder, a mere muniment of title, but is not the stock itself.—Cook *supra* § 10. The true owner of stock may compel the corporation to place his name on the stock-book and also issue to him a certificate of the stock to which he is entitled. The organization certificate was dated April 7th, 1887, was filed in the comptroller's office, April 16th, 1887, and according to the testimony, the bank was regularly organized for business April 23rd, 1887. Up to this time, the evidence shows that Roden was a shareholder, as much so, as any member of the association, for it seems from the evidence that no certificates of stock were issued to any stockholder earlier than perhaps the 17th of May, following its organization.

On the 26th day of May certificates were issued to Jno. W. Reed, who was then president of the bank, as the owner of 305 shares. The proof is sufficient to show that the 40 shares subscribed for by Roden were included in and were a part of the 305 shares for which certificates were issued to Reed, and he was entered on the stock-book as the owner of 305 shares.

The respondent bank does not pretend to question the validity of the certificates for 305 shares issued to Reed; in fact it insists that all the authorized stock has been properly issued, and that Reed was entitled to 305 shares. We need not stop to comment here on the fact of Reed's insolvency, and his indebtedness to the bank and the resources of the bank to secure itself against loss depends in a great measure, in upholding the regularity of the issue of the certificates for 305 shares to Reed.

We have no reason to doubt that 50 per cent. of these shares were paid for by some one at the time of filing the original certificate of organization, and under respondent's own theory and proof, the entire amount must have been paid for in cash before the issue of the certificate for the 305 shares of stock. The answer avers that all the shares have been issued, and are now owned by *bona fide holders*, and that dividends have been declared and paid upon them to the proper owner. Did Reed pay the cash for the 40 shares subscribed for by Roden for which he received certificates, and if so when, and did he pay on his own account, or for Roden? On the 7th of March, 1887, Roden executed to Reed his note for eight hundred dollars, and on April 5th, he executed a similar note for twelve hundred dollars each bearing interest from date. These two notes equal in amount 50 *per centum*

of his subscription for forty shares of stock. The certificate of organization bears date April 7th, two days later, and which certificate represented that fifty *per centum* of the stock had been paid for in cash. May 23, Roden executed his other note to Reed for two thousand dollars, interest from date, an amount equal to 50 *per centum* of the stock, and on May 26th, three days after, a certificate for 305 shares, which included the forty shares subscribed for by Roden, was issued to Reed. These three several notes were endorsed by Reed to the bank. These original notes have all been taken up by Roden, and from time to time the debt renewed, and extended, and the renewal notes made payable directly to the bank, and the proof shows that large amounts have been paid in money upon these notes at different times by Roden to the bank.

The bank now holds Roden's notes, representing an unpaid balance of the original debt to Reed, and it is admitted, at the present time, is prosecuting a suit against him upon them in the Circuit Court. That the original notes became the property of the bank by endorsement from Jno. W. Reed, the payee, is undisputed, and were renewed by Roden by notes made payable to the bank. Roden testifies, and this evidence is not controverted, that when Reed solicited his subscription as a shareholder, he told Reed that the money market was tight and he did not care to become a subscriber, and that Reed agreed to arrange for the money, and upon this understanding he subscribed for the stock. When called upon for the first payment of 20 per cent. Reed told him the bank was not organized and he could not lend the bank's money, but "that he (Reed) had money which he could lend me and then the notes would be turned over to the bank and I could then make my arrangements with the bank." The note for $800.00 with interest was then executed by Roden to Reed, payable on the 9th of July. This note was endorsed by Reed to the bank, and on the 9th of July after the bank was organized taken up by Roden, a payment made on it, and a new note executed payable directly to the bank. On the 5th of April with the same understanding with Reed the second note for $1,200.00 was executed, making the 50 per cent. required to be paid in, and on the 7th of April, two days later, the certificate of organization was duly made out, and filed in the Treasury Department with Roden as a shareholder of forty shares, and on this certificate representing that fifty per cent. of the stock was paid in, the bank was chartered with Roden as a charter member. The proof satisfactorily shows that both the bank and Roden have recog-

nized Roden's liability on these notes since they became the property of the bank. It could make no difference with Roden whether he continued to owe Reed, who agreed to advance the money for him, or the bank to whom they were transferred by Reed. Roden's ability to pay is not questioned, and he offers in his bill to pay the balance due.

Against the objection of the plaintiff, Auslen, the cashier, was permitted to testify that when Reed, the president of the bank, endorsed the notes to the bank, no consideration passed to Reed, and that in fact no money was paid for the stock subscribed for by Roden. It is not shown that this information was ever conveyed to Roden.

Without at this time considering the competency of such evidence under the facts of this case, it is evident, from the proof, that Roden has acted fairly and in good faith throughout the whole transaction. Reed agreed to advance him the money, and upon this agreement the notes were executed and made payable to him. Before the last 50 per centum was called for Roden applied to the cashier of the bank for receipts to show that the first 50 per cent. payment had been made, and the cashier executed to him in due form receipts for the proper amount showing that 50 per cent. of his subscription had been paid for in cash, and that he would be entitled to certificates of stock as soon as the remainder of the subscription was paid for. But what is the attitude of the bank from an equitable standpoint, taking the testimony of the cashier to be true? The bank received the notes from Reed, with a full knowledge that they were given for Roden's subscription for stock. It parted with no consideration to Reed or otherwise for them. It has collected from Roden large sums of money on these notes and is now seeking to compel him to pay by suit at law the remainder, and at the same time is attempting to repudiate the consideration for which they were given. The bank gave Roden no notice that his subscription for stock had not been paid for, but executed receipts to him showing the contrary to be true. In addition, it attempts to uphold and justify as lawful the issuance of certificates of stock to Reed for these forty shares, knowing at the same time, that Reed had not subscribed for them, that he had paid nothing for them, but that Roden had subscribed for them, and held the receipts of the cashier, evidencing as a fact that he had paid his subscription, and was the lawful subscriber and owner of the stock. The bank had been duly incorporated and organized for more than two years before the present bill was filed, and the subscription list, and the certificate of organization and charter as

[Lindsay v. American Mortgage Co. of Scotland.]

we have stated, all show that Roden was a subscriber and shareholder. He had made, and the bank had received many payments upon notes given by him to Reed, who had agreed to advance the money for him. There was nothing unlawful or against public policy in the agreement between Roden and Reed. Roden seems to have acted in good faith. He was made to believe that his subscription for stock had been duly paid, and with a full knowledge of all these facts, the bank issued to Reed a certificate for 305 shares, including the forty shares subscribed for by Roden, and now insists that the stock was legally issued to Reed, and that its possession is that of a *bona fide* holder. This could not be true, unless fifty per centum of the Roden subscription had been paid for in cash.

The bank under the facts, is in no position to avoid its responsibility to Roden as a subscriber for stock upon the grounds that Reed did not in fact advance the money for Roden.

The defense that Roden authorized the bank to issue the certificates of stock to Reed, so as to enable Reed to borrow money upon them, concedes that Roden was the lawful owner of the stock, and the burden is upon the bank to make good this theory of the defense. With the exception of a few declarations of Reed made in the absence of Roden, and of which he had no knowledge, and which should have been excluded as mere hearsay, there is no evidence to sustain this theory of the defense. There is positive evidence that no such authority was given to Reed by Roden. The issue of the certificate of stock to Reed for the 40 shares subscribed for by Roden, was unauthorized, and the bank must bear the consequences.

There is no error in the decree, none at least, of which appellant has cause to complain.

Affirmed.