117 So.2d 138

**W. J. EASON et al.**

v.

**SAMSON LODGE NO. 624, A. F. & A. M. et al.**

4 Div. 978.

Supreme Court of Alabama.

Nov. 5, 1959.

Rehearing Denied Jan. 21, 1960.

Quinton R. Bowers, Earl McBee and D. G. Ewing, Birmingham, for appellees.

E. C. Boswell and Chas. R. Paul, Geneva, A. A. Smith, Hartford, J. M. Williams, Jr., and Rushton, Stakely & Johnston, Montgomery, for appellants.

STAKELY, Justice.

The question for decision is whether the doctrine of prescription applies in this case.

The bill in this case was filed by Samson Lodge, a body corporate, and James W. Alpin, as Worshipful Master, L. R. Collins, as Senior Warden, and Sam Owens, as Junior Warden, of the aforesaid Lodge as complainants. Under the provisions of § 4 of the General Acts of 1859–1860, p. 458 et seq., the principal officers of each subordinate lodge under the jurisdiction of the grand lodge and their successors in office are created a body politic and corporate so as to enable them and each of their respective lodges to receive, hold and enjoy possession of and retain property both real and personal. This unusual provision of the law under which the present Masonic Lodge was incorporated accounts for the unusual way in which the complainants have brought this suit.

The respondents to the bill are Myrtie Eason and others, who will be more particularly described hereinafter and all of whom are over the age of twenty-one years. The general purpose of the bill is to set aside the alleged purported foreclosure of a mortgage and subsequent mesne conveyances, also seeking an accounting for rents and profits, also to vest the title of the real estate in the complainants and out of the respondents now claiming title.

The allegations of the bill show in substance the following. J. H. Maloy died on to wit October 19, 1949. He left surviving him his widow, the respondent Addie Maloy, and, also children named Ethel Pridgeon, Myrtie Eason, Riva Merle Maloy, E. S. Maloy, Buna M. Dunn, J. T. Maloy and Travis L. Maloy. The foregoing constitute all the heirs at law of J. H. Maloy, deceased.

The aforesaid Addie Maloy on the 18th day of November, 1949, was duly appointed executrix of the last will and testament of J. H. Maloy, deceased, in the Probate Court of Geneva County, Alabama. On information and belief it is alleged that Addie Maloy was named as executrix and the sole beneficiary under the will. Addie Maloy has attempted to convey to her daughters and sons-in-law, the respondents Eason and Dunn, the property in Samson, Alabama, known as the Masonic Building property. On May 10, 1954, Addie Maloy, a widow, attempted to convey to Grady W. Dunn and Buna M. Dunn certain real estate situated in Samson, Geneva County, Alabama, more particularly described as the West Half of Lot No. 13 in Block 6, South, according to the map of the City of Samson, Alabama, together with the building or that part of the building known as the Masonic Building standing on the property, and on the same day the said Addie Maloy attempted to convey to W. J. Eason and Myrtie Eason the remaining or eastern portion of the said Masonic Building property and more particularly described in the deed.

It is alleged that the complainant corporation was and is the owner of the aforesaid Masonic Building property situated in Samson, Geneva County, Alabama, and more particularly described as Lot No. 13 in Block 6 South and a strip of land 20 feet wide on Lot No. 14 in Block 6 South and more particularly described in the bill.

On the 14th day of October, 1921, the complainant Lodge executed a mortgage conveying the above described real estate to M. L. D. Cruse, whose correct name is M. L. D. Crews, to secure an indebtedness of to wit $5,000. This mortgage was filed for record in the office of the Judge of Probate of Geneva County, Alabama, on the 18th day of October, 1921, a copy of the mortgage being attached to the bill, marked Exhibit A and made a part thereof.

It is further alleged that prior to his death on to wit the 19th day of September, 1924, J. O. Morgan, a resident of Samson, Alabama, claimed to have acquired the aforesaid mortgage by transfer thereof from the said M. L. D. Cruse (Crews), but that no transfer of said mortgage was ever

filed for record in the office of the Judge of Probate of Geneva County, Alabama.

The complainant Lodge further avers that payments of said mortgage were made to the said J. O. Morgan by or for and on behalf of the complainant Lodge as mortgagor and at the time of the death of said J. O. Morgan, complainant is informed and believes and upon such information and belief avers that the indebtedness secured by said mortgage had been reduced to the sum of $1,000 or less.

On the 16th day of September, 1924, J. H. Maloy was appointed administrator of the estate of J. O. Morgan, deceased. J. O. Morgan was survived by his widow, Lula Morgan, now deceased, and one daughter, respondent Addie Maloy, who was her only heir at law. Lula Morgan died on July 22, 1952, intestate. No administration has ever been had on her estate. She was survived by the respondent Addie Maloy as sole surviving heir at law.

The estate of J. O. Morgan, deceased, was finally settled on the 21st day of December, 1928, and a decree was rendered by the Judge of Probate of Geneva County, Alabama, discharging J. H. Maloy as administrator of said estate and releasing the sureties on his bond. J. H. Maloy claimed or represented prior to his death that the above described mortgage was duly transferred to J. H. Maloy as administrator on the 3rd day of January, 1925. No transfer was filed for record in the office of the Judge of Probate of Geneva County, Alabama.

It is alleged that J. H. Maloy while he continued to be the administrator of the estate of J. O. Morgan, deceased, from time to time collected on such mortgage sums to be credited on the principal and interest or both and executed and signed receipts for the same, "J. H. Maloy, Agent."

Subsequent to the closing of the estate of J. O. Morgan, deceased, and after J. H. Maloy was discharged as administrator of the estate, the said J. H. Maloy continued to receive payments on said mortgage indebtedness and continued to execute and sign receipts for said payments in the same manner, that is, "J. H. Maloy, Agent." It is alleged on information and belief that said J. H. Maloy received said payments as agent for the mortgagee.

On the first day of January, 1932, J. H. Maloy, as Agent for the mortgagee, entered into a verbal agreement with the complainant Lodge, in substance, that J. H. Maloy, as such Agent for the mortgagee, would rent out the downstairs portion of the aforesaid Masonic Lodge Building to tenants and would collect the rents, keep the premises in repair and apply the net rents, after making necessary repairs, upon the aforesaid mortgage indebtedness.

It is alleged on information and belief that subsequent to the death of J. O. Morgan, deceased, J. H. Maloy, as agent as aforesaid, received payments for and on behalf of the complainant Lodge up to January 1, 1932, and subsequent to said date and up to November 5, 1935, J. H. Maloy, as agent of the mortgagee, collected all the rents from the downstairs portions of the aforesaid building and after paying for necessary repairs, applied or was obligated to apply the balance of the aforesaid rents collected upon the aforesaid indebtedness.

It is further alleged on information and belief that the total amount received by the said J. H. Maloy, as agent for the said mortgagee, up to November 5, 1935, and which was applied and credited upon, or which should have been applied and credited upon the said mortgage indebtedness, was sufficient to pay the aforesaid indebtedness in full, so that on said date there was nothing whatever due and unpaid on said mortgage and, in fact, the same was overpaid.

On the 5th day of November, 1935, J. H. Maloy purported or attempted in his capacity as administrator of the estate of J. O. Morgan, deceased, to foreclose the foregoing mortgage and purported in his

capacity as administrator to have purchased the said real estate described in said mortgage at and for a reported consideration of $6,876.68. The foreclosure deed was purportedly executed on the 20th day of November 1935 and was filed for record in the office of the Judge of Probate of Geneva County on November 20, 1935. A copy of the purported foreclosure deed is attached to the bill of complaint, marked Exhibit B and made a part thereof.

It is alleged that the attempted foreclosure of the mortgage and the purported foreclosure deed are invalid, null and void or voidable for fraud and of no effect for the following separate and several reasons alleged both severally and cumulatively.

We shall not undertake to set out here the reasons which are alleged to show that the purported foreclosure deed is invalid except to say, in brief, that it is claimed that the mortgage indebtedness had been paid in full at the time of the alleged foreclosure, the purported foreclosure was in breach of the relationship of trust and confidence resulting and growing out of the aforesaid agreement between J. H. Maloy and the complainant Lodge made on January 1, 1932, that the complainant Lodge did not know and was never informed of the attempted foreclosure until the same was discovered as hereinafter set forth. The attempted foreclosure and possession of said property by the said J. H. Maloy in his capacity as the alleged administrator was invalid for that the said J. H. Maloy had already at said time been discharged as such administrator and was at the said time without authority to attempt to foreclose said mortgage and to purchase said real estate in said purported capacity, that the foreclosure sale was invalid in that J. H. Maloy had no authority or right to do any act in his capacity as administrator at the time of the purported attempted foreclosure for the reason that J. H. Maloy had ceased to be such administrator at the time of the final settlement of the estate of J. O. Morgan, deceased, on the 21st day of December, 1928.

The complainant Lodge further avers that it has continuously and uninterruptedly been in peaceable possession of the entire upstairs portion of said Masonic Building, which consists of a two-story brick building, since the same was erected upon the above described real estate by the complainant Lodge during the year 1921. At no time has the right of possession of the complainant Lodge as the owner of said building been questioned either by J. O. Morgan or J. H. Maloy or any of the other parties respondent to the bill. Since 1932 the downstairs or ground floor portion of the said building has been rented out to various and sundry tenants by J. H. Maloy, as Agent, up to the time of the death of J. H. Maloy and subsequently by Addie Maloy and by the respondents Easons and respondents Dunn.

It is further alleged that in legal effect the possession by the above named parties of the downstairs portion of the Masonic Building since 1932 has been that of a mortgagee in possession and the possession of the said J. H. Maloy, as Agent, was actually and in truth the possession of Addie Maloy together with the Dunns and Easons and they are accountable to the complainant Lodge for all net rents during said period after deducting any reasonable expenditures made on account of any repairs to the downstairs portion of the building.

Complainant Lodge has kept the roof and the entire upstairs portion of the said Masonic Building in good repair. It is alleged that the complainant Lodge is entitled to the immediate possession of the entire downstairs portion of the Masonic Building and is entitled to a decree against the respondents and an accounting in to wit the sum of $25,000.

It is further alleged that J. H. Maloy and the several respondents to the bill have kept the fact of the alleged foreclosure of said mortgage as hereinabove referred to in complete secrecy and at no time have they ever demanded possession of the upstairs portion of the Masonic Building

from the Lodge nor have they demanded that the Lodge pay rent upon the upstairs portion of the building.

It is further alleged that the complainant was caused to be lulled into the belief and understanding that the rents and profits collected from the downstairs portion of said building were being collected and applied to and credited upon the said mortgage indebtedness and did not discover that the aforesaid Easons and Dunns claim to own the Masonic Building under and through said purported foreclosure sale until in to wit the month of April, 1957, when the complainant Lodge employed counsel to investigate the tax status of the said real estate and to determine whether any taxes were due upon same, as the complainant Lodge had been proceeding under the assumption that the same was exempt from taxation under the laws of Alabama. Inquiry made by counsel pursuant to said employment of the State Department of Revenue, Ad Valorem Tax Division, disclosed the fact that the said real estate was sold for taxes in 1931 and redeemed on September 15, 1954, by Grady W. Dunn. Upon investigation of the title records in the office of the Judge of Probate of Geneva County, Alabama, by said attorney, following receipt of the above information, he discovered the said purported or attempted foreclosure and such attempted foreclosure and purported foreclosure deed were then for the first time made known to the complainant Lodge.

The downstairs portion of the Masonic Building is now in possession of the respondents Sam Owens and Bryant Murdock, who, in their capacity as individuals, are made parties respondent to the bill and who are merely tenants and do not otherwise claim any interest in or title to such real estate. Respondent Owens is renting a part of the downstairs portion of the building at a monthly rental of $50. Respondent Murdock is renting the remaining downstairs portion of the building at a rental of $35 per month. The complainant Lodge alleges in the bill that it sub-

mits itself to the jurisdiction of the court and offers to do equity.

I. The court overruled the demurrers to the bill of complaint as a whole and to the several aspects thereof and from this decree the several respondents bring this appeal to this court and assign as error the ruling on demurrer to the bill as a whole and to the several aspects thereof.

Our analysis of the bill of complaint shows that the bill is single in its scope and purpose and therefore the demurrers go to the sufficiency of the bill as a whole. Vaughn v. Pansey, Friendship Primitive Baptist Church, 252 Ala. 439, 41 So.2d 403. In other words, the method used by the demurrants in addressing their demurrer does not determine the aspects of the bill of complaint but this is done by analyzing the averments and purpose of the bill of complaint. Martin Stamping & Stove Co. v. Manley, 260 Ala. 112, 69 So.2d 671. In our judgment the scope and purpose of the bill of complaint is to vacate and annul the attempted foreclosure. All of the rest of the relief prayed for in the bill of complaint is incidental.

It seems to us that the primary questions for decision are whether the Lodge is barred from the relief sought on account of the statute of limitations, laches or prescription. These questions, among others, are raised by the demurrers. Obviously if relief is barred by prescription, there is no need to consider the statute of limitations or laches. We shall undertake to show that the relief sought is barred by prescription.

The allegations of the bill show that there was a purported foreclosure of the mortgage on the 5th day of November, 1935. A foreclosure deed pursuant thereto was executed on the 20th day of November, 1935, and filed for record on the same day in the office of the Judge of Probate of Geneva County, Alabama. Thus the bill of complaint shows on its face that the mortgage was foreclosed more than twenty

years prior to the filing of the present bill of complaint.

In Findlay v. Hardwick, 230 Ala. 197, 160 So. 336, 340, it was said:

"Under the doctrine of prescription, the law conclusively presumed that Marcella White was the owner *in fee,* and this presumption precludes all judicial inquiry into her title. Kidd v. Borum, 181 Ala. 144, 61 So. 100, Ann. Cas.1915C, 1226; Moore v. Elliott, 217 Ala. 339, 116 So. 346; Tharp v. Johnson, 219 Ala. 537, 122 So. 668."

To the same effect is the case of Jackson v. Stephens, 251 Ala. 559, 30 So.2d 226. There are many other such cases. In Kidd v. Borum, 181 Ala. 144, 61 So. 100, 106, it is said: "This court has repeatedly held that the lapse of 20 years, without recognition of adversary right, or admission of liability, operates an absolute rule of repose."

In Case v. Conservation & Land Co., 256 Ala. 46, 49, 53 So.2d 562, 564, it is said:

"Complainant, of course, had no vendor's lien if the debt secured thereby had been paid and discharged. In Goodwyn v. Baldwin, 59 Ala. 127, 128, Justice Stone, writing for the court, said: 'In McArthur v. Carrie's Adm'r., 32 Ala. 75, 70 Am.Dec. 529, the question of lapse of time and long acquiescence was pretty fully considered. Many authorities were cited, and some of them commented on. The principle then asserted has been followed, and has become a rule of decision in this court. See Austin v. Jordan, 35 Ala. 642; Coyle v. Wilkins, 57 Ala. 108. The substance of the principle is, that if parties allow twenty years to elapse without taking any steps to compel a settlement, or to assert rights of property, the presumption of payment, or settlement of the disputed title arises. We have no disposition to re-examine the grounds on which that principle rests.' "

In Oxford v. Estes, 229 Ala. 606, 158 So. 534, 538, this court said:

"Prescription, as a bar to actions at law or in equity, is a rule of repose; aims at an end of controversies touching the title to property; fixes twenty years as the absolute limit beyond which courts will not inquire; applies to express trusts which have lain dormant, unrecognized, and unasserted for twenty years; no disabilities, such as infancy, prevent or suspend the running of the twenty-year period. The rule is bottomed on the doctrine that demands unasserted for so long a time, either had no foundation in justice, or have been adjusted.

"Failure of memory, loss of evidence, death of parties, the probability that the whole truth cannot be ascertained and justice done, enter into the equation as a reason for the rule. It is not a presumption merely, but a rule of law, raising an absolute bar to ancient causes of action. * * *."

It is argued, however, that through all the years the Lodge has been in the peacable, uninterrupted possession of the upstairs part of the Masonic building property and therefore the mortgagee and his successors in interest have not had exclusive, hostile possession which are necessary elements of adverse possession. Ordinarily where two parties are in possession of real estate, neither has exclusive, hostile possession. For example in Bell v. Williams, 256 Ala. 298, 54 So.2d 582, there was a situation where tenants in common could not ordinarily claim against each other by adverse possession. The relationship, however, in the instant case between the Lodge and M. L. D. Crews was that of mortgagor and mortgagee.

It has been held that possession by a mortgagor after a foreclosure sale is presumed to be in subordination to the title of the purchaser and the statute of limitations does not run in favor of the mortgagor in such a situation. Seeley v. Man-

ning, 37 Wis. 574; Record v. Ketcham, 76 Ind. 482; Loury v. Tilleny, 31 Minn. 500, 18 N.W. 452; Romanchuk v. Plotkin, 215 Minn. 156, 9 N.W.2d 421. See also Woods v. Sanders, 247 Ala. 492, 25 So.2d 141.

In Walker v. Coley, 264 Ala. 492, 88 So. 2d 868, 873, we pointed out that the same requirements as to adverse possession do not apply to prescription and that the principle of subservience of a grantor remaining in possession to the title of his grantee does not apply where the grantor and his successor in interest "had the open, notorious, exclusive possession for a period of 20 years or more" after making the deed.

 We see no reason why the rule of Walker v. Coley, supra, should not apply to a mortgagor after foreclosure who has remained in the open, notorious and exclusive possession for a period of twenty years or more. Where such possession is shown to have existed for the twenty year period the mortgagor's title is not presumed to be subordinate to and in recognition of the rights of the purchaser at the foreclosure sale.

In the instant case, however, the mortgagor has not had the exclusive possession of all the property sold at the foreclosure sale. The downstairs portion of the structure involved has been in the exclusive possession of the purchaser at the foreclosure sale and his successors in interest. In view of that fact we take the view that the presumption of subserviency applies to the possession by the appellee of the upper story of the structure. The bill contains no averments sufficient to rebut that presumption.

We are quite aware that the bill alleges that the foreclosure of the mortgage was kept a secret for many years by the appellants and their predecessors in interest. We cannot accord weight to this allegation, however, because there was a due and proper notice of the foreclosure in the newspapers at the time of the foreclosure in accordance with the provisions of the mortgage and the foreclosure deed was duly recorded more than twenty years prior to the institution of this suit.

We have read the able briefs filed on both sides of the case by the attorneys and have considered the case with great care but due to the firm rule of repose which has been of long standing in this state, we do not think that at this late date the court should try to clear up a matter which at best appears to be clouded by long lapse of time.

Accordingly we conclude that the demurrer taking the point that the suit is barred by prescription is well taken and should have been sustained.

Reversed and remanded.

LIVINGSTON, C. J., and LAWSON, GOODWYN and MERRILL, JJ., concur.