123 So.2d 166

## G. E. BALLENGER

### v.

## LIBERTY NATIONAL LIFE INSURANCE COMPANY.

### 6 Div. 394.

Supreme Court of Alabama.

May 19, 1960.

Rehearing Denied Sept. 15, 1960.

Hare, Wynn & Newell and Sirote, Permutt, Friend & Friedman, Birmingham, and Walker & Walker, Opelika, for appellant.

Frank E. Spain, Frank M. Young, Ralph B. Tate, Ira L. Burleson and Spain, Gillon & Young, Birmingham, for appellee.

**320**

SIMPSON, Justice.

This is an action by appellant against appellee for the conversion by appellee of appellant's share of stock in appellee corporation. The complaint also contains a count in assumpsit and two counts declaring upon Title 7, § 42, Code of Alabama of 1940, relying upon discovery of fraud within one year prior to the filing of the complaint.

This is the second appeal in this case. On the first appellee sought to transfer the case to equity on the contention that it could not take advantage of certain equitable defenses on the law side. This court reversed the trial court (266 Ala. 407, 96 So.2d 728), holding that all available defenses were pleadable at law.

The trial was had at law and the trial court at the conclusion of the evidence gave the general affirmative charge with hypothesis for the appellee. From that judgment this appeal is taken.

The record in this case consists of some 1,175 transcript pages. Only the salient facts as established by the evidence and necessary to an understanding of our decision will be mentioned.

In 1926 J. N. Brown owned and operated Brown Funeral Home and appellant was his embalmer. In 1926 J. N. Brown Funeral Benefit Association filed its articles of incorporation in the Probate Court of Jefferson County showing five incorporators including Brown and appellant. Brown subscribed for 46 shares and the other four subscribed for 1 share each. Nobody got a certificate in 1926, but in 1928 all of the stock was issued to Brown. In 1928 the burial association changed its name and increased its capital in a stockholders' meeting which recorded J. N. Brown voting 46 shares, and four other individuals not including appellant, voting one share each. The common stock was increased to 500 shares of stock authorized at that time. Preferred stock was created in the 1928 meeting and a 2,000 share preferred stock dividend was declared by the directors who were the same persons who voted the increase, but none of them except Brown and Edmundson got stock certificates.

In January, 1933 the company became known as the Brown-Service Funeral Company. In 1938 the name was changed to Brown-Service Insurance Company, and in 1944 the company and Liberty National Insurance Company were consolidated, and the new consolidated company was named Liberty National Life Insurance Company. All of the outstanding stock of the former Brown-Service and Liberty National companies was cancelled and put back in the stock books and all of the stock of the new consolidated company was issued in exchange, pursuant to the consolidation agreement.

In 1954 appellant demanded of Liberty National, appellee, stock evidencing his interest as a stockholder in Liberty National Life Insurance Company as a result of the mergers involving the original assets of J. N. Brown Burial Benefit Association.

Appellant contends that the trial court erred in directing a verdict for appellee on the ground of prescription, arguing that prescription does not lie to prevent a suit by a stockholder against a corporation to require it to issue a stockholder a certificate or for damages for its refusal to issue a certificate if such is filed within due time after such refusal. The same argument is made with reference to the statute of limitation. Subsumed under this argument are several propositions, for example: There can be no prescription without adverse possession; possession of a corporation is not adverse to that of its stockholders; limitations do not run in favor of a trustee (and that a corporation is a trustee for its stockholders) in an action by the cestui que trust for conversion or misappropriation of its property. He likewise contends that neither prescription nor limitations begins to run before accrual of cause of action which requires assertion of an adverse claim, and the conduct of the corporate officers in 1928, in issuing to themselves stock certificates purporting to convey all of the stock of the company, is not conduct

which the plaintiff must elect to consider as a conversion of his property depriving him of his legal title.

Defendant-appellee takes the position that if the action by the corporate officers in 1928 was a conversion of the plaintiff's stock, his cause of action is barred by the statute of limitations of six years, or in any event his claim is barred by the twenty year prescriptive period.

Appellant also contends that the twenty year prescriptive period does not bar him in this action since appellee filed in 1935, several years after the 1923 meeting, and within less than twenty years before the filing of this suit, an amendment to its charter adopting the original charter showing the appellant as a stockholder, that this amounts to recognition within twenty years and prevents the doctrine of prescription from applying.

He also relies upon Title 7, § 42, supra, seeking relief on the ground of fraud with suit brought within one year from the discovery of fraud.

■ The law, of course, as argued by appellant is that one can be a stockholder in a corporation without having issued to him a certificate of stock. In Birmingham National Bank v. Roden, 97 Ala. 404, 11 So. 883, 884, this court said:

> "The original organization certificate in the comptroller's office of the treasury department shows this, and that he was a shareholder of 40 shares. In the absence of evidence of forgery, fraud, or mistake, we think evidence conclusive on him and the corporation that he was a shareholder at the time of its organization, * * *. It is true that no certificate of stock was ever issued to him, and there is no proof that his name was entered in the stock book of the company as a shareholder. Neither was indispensable to constitute him a shareholder. The certificate is mere evidence that the holder thereof is a shareholder; a

mere muniment of title, but is not the stock itself."

■ However, as to the contention that a shareholder is not barred by limitations or prescription when his stock has been converted, we cannot agree.

■ In 1926, and thereafter until 1928 when all stock was issued, appellant, being listed as a shareholder in the certificate of incorporation of the J. N. Brown Funeral Benefit Association, had his remedy as a person entitled to a certificate to compel the corporation to issue one to him. After 1928 he was entitled to damages for the conversion of his stock. In the Birmingham National Bank v. Roden case, supra, a bill was brought in equity to compel the corporation to issue stock to the plaintiff or pay the value of the stock, etc. The reporter in the Southern Reporter thus correctly epitomized the holding of the chancellor:

> "On the final submission of the cause on the pleadings, and proof, the chancellor decreed that the complainant was entitled to the relief prayed for, but, 'it appearing to the satisfaction of the court that the defendant corporation has heretofore issued, and that there is now outstanding, certificates for the full amount of its authorized capital stock, wherefore a specific performance may not be compelled of its obligation to issue certificates for stock to the complainant,' therefore it was ordered and decreed 'that the defendant do pay to the complainant the amount of the market value * * *' ".

The holding was affirmed by this court. But in the case at bar, neither of these remedies did the appellant pursue. He, instead, has waited some 28 years and has demanded recognition in a corporation which is two corporations removed from the original. We think he has waited too long.

The doctrine of prescription has been stated many times in our decisions. Snodgrass v. Snodgrass, 176 Ala. 276, 58 So. 201,

cited with approval in Eatman v. Goodson, 1954, 262 Ala. 242, 78 So.2d 625, stated the rule as follows:

"As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into. It is settled that, after a period of 20 years, without any payment, settlement, or other recognition of liability, mortgages and liens will be presumed to have been paid, settlements will be presumed to have been made by administrators, trustees, agents, and other persons occupying fiduciary positions. It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have demanded an accounting, and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to demand an accounting. The consensus of opinion in the present day is that such presumption is conclusive, and the period of 20 years, without some distinct act in recognition of the trust, a complete bar; and, as said in an early case, 'the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, "and relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible."' Harrison et al. v.

Heflin, Adm'r, et al., 54 Ala. 552, 563, 564; Greenlees v. Greenlees et al., 62 Ala. 330; Nettles v. Nettles, 67 Ala. 599, 602; Garrett v. Garrett, 69 Ala. 429, 430; Semple v. Glenn, 91 Ala. 245, 260, 6 So. 46, 9 So. 265, 24 Am. St.Rep. 929; Roach v. Cox, 160 Ala. 425, 427, 49 So. 578, 135 Am.St.Rep. 107."

The rule has been applied to various situations but always consistently and unvariably. Eason v. Samson Lodge # 624, A.F. & A.M., Ala., 117 So.2d 138 [1]; Mott v. Helmes, 246 Ala. 331, 20 So.2d 461; Wise v. Helms, 252 Ala. 227, 40 So.2d 700; Oxford v. Estes, 229 Ala. 606, 158 So. 534; Case v. Conservation & Land Co., Inc., 256 Ala. 46, 53 So.2d 562; Eatman v. Goodson, 262 Ala. 242, 247, 78 So.2d 625.

■ Lack of notice is not sufficient to avert the application of the doctrine Merrill v. Merrill, 260 Ala. 408, 71 So.2d 44—as is the mere assertion of a claim insufficient to avert its application. See Eatman v. Goodson, supra.

■ We have often stated that "the basic principle of prescription is not the mere lapse of time, but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears." Hendley v. First National Bank of Huntsville, 234 Ala. 535, 176 So. 348, 349, Id., 235 Ala. 664, 180 So. 667; Eatman v. Goodson, supra.

Appellant asseverates that Braun v. Pettyjohn, 176 Ala. 592, 58 So. 907, sustains his contention that the 1935 re-recording of the articles of incorporation of J. N. Brown Burial Benefit Association was a recognition by the successor corporation of appellant's claim. That case dealt with a mortgage foreclosure bill filed less than 20 years from the date of the mortgage, where the property, the subject of the mortgage had subsequent to its execution, been conveyed to the respondent by a deed

specifically saying the land was subject to the mortgage. There the respondent distinctly recognized the mortgage lien of complainant. Such is not the case here, and Braun v. Pettyjohn, supra, does not support appellant's contention with respect to the 1935 re-recordation of the articles of incorporation of the original corporation.

■ The 1935 re-recordation of the Articles of Incorporation of the J. N. Brown Burial Benefit Association, the original corporation, was the result of orders of the Superintendent of Insurance to the successor corporation. That re-recordation did not amount as a matter of law to a recognition of appellant's claim as of 1935. It simply stated that he was an original incorporator in 1926, which does not rise to the dignity of a "distinct" recognition of his claim as of 1935.

■ The record discloses no evidence from which the jury could have inferred fraud so as to bring into operation Title 7, § 42, Code of Alabama of 1940.

This being the view we take of the case, there is no necessity to further note other assignments of error complained of by appellant. We entertain the view that the trial court correctly directed a verdict for appellee.

Affirmed.

GOODWYN, MERRILL, and COLEMAN, JJ., concur.

On Rehearing

PER CURIAM.

Counsel for appellant in his application brief on rehearing and letter to the Court transmitting the same has characterized the original opinion in this case, among other things, as "ridiculous", "a sadly erroneous opinion", "a grievous injustice", and an "unmitigated tragedy", and says that appellant is "old and sick and his family will suffer for the necessities of life because his property has been taken from him and given with the sanction of this Court to the most powerful and wealthy corporation in this state".

■ As sympathetic as we might be with the personal plight of appellant, we are constrained to decide cases in this Court on the law as we believe it to be applicable. This is what we endeavored to do in our original opinion, to which we still adhere, and which will appear correct to the impartial mind. It is our belief that the doctrine of prescription as it has been applied in this state bars the appellant in his claim. In a given instance the effect of this long-established principle of law might work hardship and disappointment. It is not our province, however, to decide cases on the basis of what we feel would be the most humane, but to apply to the facts the applicable law. And it is our sincere belief that our system of justice based upon application of precedent, which binds us, is over-all the most humane and fair procedure. After a careful study of the two briefs filed on behalf of appellant in his effort to obtain a rehearing of this cause, we are still of the opinion that the law in this state is against the appellant. In 13 Am.Jur., § 320, pp. 399–400, we find the following general statement of this law:

> "While a certificate of stock is not necessary to the complete ownership of the stock or to the creation of the relationship of stockholder, there can be no doubt that a corporation is bound, even in the absence of a statutory provision, through its proper officers, to issue to each stockholder who has fully paid for his stock a stock certificate representing his interest in the corporation; and upon the refusal of the corporation, *upon demand,* to issue a certificate of stock to the person entitled thereto, the latter may at his election bring an action at law against the corporation for damages, treating the wrongful refusal to so issue the certificate as a conversion, or a suit in

equity to compel the corporate officers to execute and deliver a proper certificate. Equity has jurisdiction in the matter of a suit brought by a stockholder against a corporation to compel it to issue a certificate for the shares of stock owned by him in such corporation; and if there is any valid reason why this relief cannot be given, equity will grant alternative relief by way of damages. A corporation cannot, however, be compelled to issue stock if it is not provided for by the law of its incorporation and available to be issued.

*"A stockholder may lose his right to invoke the aid of equity to compel the corporation to issue him a certificate for the shares of stock owned by him, by a delay of some years, knowing during that time that he is not recognized as one of the stockholders, and he may, by his subsequent conduct, inconsistent with a claim for conversion, waive his right to sue at law for damages."* (Emphasis added.)

See also, by way of analogy, Greenlees v. Greenlees, et als., 62 Ala. 330, 333.

Can it be said that appellant did not know that he was not being recognized as a stockholder in the appellee corporation and its predecessors? He never received any notice of meetings of stockholders, any dividends, etc. He was working for the corporation (and its predecessors) throughout the whole of the twenty-eight years involved. He is bound to have been cognizant of the prosperity and expansion which his employer enjoyed. Surely the most naive would realize that he was not being treated as a stockholder.

The doctrine of prescription in this state is perhaps unique. It is, however, well established, and has application beyond the statute of limitations, and not affected by it. Patterson v. Weaver, 216 Ala. 686, 114 So. 301. The rule creates a conclusive bar. Roach v. Cox, 160 Ala. 425, 49 So. 578,

135 Am.St.Rep. 107. It is "not affected by the circumstances of the situation, that is to say, whether truth and justice are thereby obscured, or by the death of parties or destruction of testimony, and conduct based upon the apparent situation, or the age, state of mind, or status of responsibility. These are circumstances which are considered in respect to laches but not prescription. Oxford v. Estes, supra; Courson v. Tollison, 226 Ala. 530, 147 So. 635; Ashurst v. Peck, 101 Ala. 499, 14 So. 541; * * *". Quoted from Wilkerson v. Wilkerson, 230 Ala. 567, 571, 161 So. 820, 822. And in Garrett v. Garrett, 69 Ala. 429, it is said:

> "So sweeping is the principle in its scope and operation, that the presumption raised by it is not arrested or rebutted by the proof of any disability, such as infancy or coverture, on the part of the distributees by whom a trustee or administrator has been cited to settlement."

With this illustration of the state of the law of prescription in Alabama we are not persuaded that an exception to its operation should be made in the case of a stockholder without a certificate with a twenty-eight year old claim against the corporation, inasmuch as the rule is clear that status of responsibility has no effect upon its operation. We have consistently held that it operates alike on all, regardless of the status or condition of the parties. Patterson v. Weaver, supra.

Our doctrine of prescription is so long established in this state, as illustrated by the authorities cited in the original opinion, that we do not consider it necessary to restate it here.

Opinion extended and application for rehearing overruled.

SIMPSON, GOODWYN, MERRILL, and COLEMAN, JJ., concur.