SEE, Justice
(dissenting).
I respectfully dissent from the majority’s denial of certiorari review, which allows 140 years of unbroken precedent upholding the common-law doctrine of “presumption of payment” to be effectively overruled. The Court of Civil Appeals clearly erred in its interpretation of the doctrine of presumption of payment with respect to the automatically renewable certificate of deposit (“CD”) at issue in this petition. Compass Bank v. Richerson, 724 So.2d 10 (Ala.Civ.App.1998). Allowing the opinion of the Court of Civil Appeals to stand undercuts the reliability of personal property adjudications by allowing such adjudications to be based on stale evidence and faded memories.
Although the evidence is set forth in detail in the opinion of the Court of Civil Appeals, the evidence pertinent to this Court’s review suggests the following facts: On February 17, 1971, F.B. Richerson purchased a one-year $10,000 CD from State National Bank of Alabama, whose successor in interest is Compass Bank (collectively, the “Bank”). The CD stated, in part, that it would be automatically renewed each year if not presented for redemption within 10 days of its anniversary date.
In February 1973, Richerson informed the Bank that he had not received any information regarding the first year’s interest, which would have accrued from February 1971 to February 1972. Apparently, the Bank informed Richerson of the amount of interest, and he reported the interest on his personal income tax return.
After February 1973, the only evidence is that the Bank never reported any further taxable income to Richerson, never sent him a statement, and never sent him a renewal notice. Richerson does not allege that he communicated with the Bank in any manner with respect to the CD.
Twenty-three years later, in February 1996, Richerson demanded payment of the CD. The Bank, however, had no record of the CD and refused to pay Richerson. Richer-son sued the Bank to collect the principal and interest on the CD. The trial court entered a summary judgment in favor of Richerson. The Bank appealed, arguing that there is a presumption that the CD has been paid.
The Court of Civil Appeals affirmed the trial court’s summary judgment for Richer-son. The Court of Civil Appeals held that the doctrine of prescription, or presumption of payment, did not apply. Specifically, the Court of Civil Appeals concluded, based on the automatic renewal feature of the CD, that the 20-year prescription period could not have been triggered until Richerson *15 made a demand for payment.[1]
In 1858, this Court applied the doctrine of presumption of payment, or prescription, as a rule of repose for the settlement of claims for personal property. McArthur v. Carrie’s Adm’r, 32 Ala. 75 (1858). Under that doctrine, a trust is presumed to have been settled, an accounting made, or a debt paid, if there has been no overt display of the customary indicia of the asserted relationship (e.g., fiduciary-beneficiary or debtor-creditor) by either party for a period of at least 20 years. The doctrine is premised on the recognition that after two decades since there was some notice of a potential claim, the absence of evidence and the loss of the memories of witnesses leave the courts in a position only to engage in guesswork rather than in adjudication. See Harrison v. Heflin, 54 Ala. 552, 563-64 (1875) (explaining that the doctrine of presumption of payment “‘relieves courts from the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life, that the attainment of truth and justice is next to impossible’ ”) (citation omitted).
In Snodgrass v. Snodgrass, 176 Ala. 276, 280-81, 58 So. 201, 201-02 (1912), this Court explained:
“As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into. It is settled that, after a period of 20 years, without any payment, settlement, or other recognition of liability, mortgages and liens will be presumed to have been paid, settlements will be presumed to have been made by administrators, trustees, agents, and other persons occupying fiduciary positions. It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have demanded an accounting, and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to demand an accounting. The consensus of opinion in the present day is that such a presumption is conclusive, and the period of 20 years ... a complete bar; and, as said in an earlier ease, ‘the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them ....’”
(Emphasis added.)
In Snodgrass, 176 Ala. at 278-80, 58 So. at 201, two sons successively administered the inherited property of their siblings after the death of their parents. Upon the second son’s death, the administrator of the estate of one of the siblings demanded an accounting and payment from that son’s estate, asserting that the son had administered the property in an agency or trust relationship for the siblings. Id. at 277, 58 So. at 201,. For 20 years after they plight have demanded an accounting, neither the son nor the siblings had made an overt display of the customary indicia of the asserted fiduciary relationship (e.g., requesting accountings, sending correspondence concerning the property, etc.). Id. at 280, 58 So. at 201 (“[N]o act is alleged in recognition of said agency or trusteeship.”). Instead of-placing the force of law behind vague guesses derived from incomplete evidence and dimmed memories, the Court presumed a complete and final accounting to have been made and refused to enforce a claim the siblings themselves had not actively pursued. Id. at 282, 58 So. at 202.
In Spencer v. Hurd, 201 Ala. 269, 77 So. 683 (1918), this Court held that a mortgagee could not collect an alleged balance due from the mortgagor after a 20-year period without an overt display of the customary indicia of *16 the asserted balance due on the mortgage indebtedness. This Court stated: “[W]e consider the question as settled by the decisions of this court that the presumption of payment or extinguishment is conclusive where 20 years have elapsed and the creditor has been inactive, or there has been no recognition of the liability by the debtor.” Id. at 270, 77 So. at 684 (emphasis added). For 20 years, neither the debtor nor the creditor had made an overt display of the customary indicia of the asserted mortgage indebtedness (e.g., making payments, issuing statements showing a balance due, requesting payments, etc.). Id. at 270, 77 So. at 684. Thus, this Court presumed a complete and final payment to have been made and refused to enforce a claim that the creditor himself had not actively pursued. Id.
In Ballenger v. Liberty National Life Insurance Co., 271 Ala. 318, 128 So.2d 166 (1960), the plaintiff had been an original in-corporator of a funeral home corporation. The articles of incorporation stated that he was due one share of stock, but the share was never issued. Id. at 319, 123 So.2d at 167. The funeral home corporation was later consolidated with a large life insurance company, and the resulting insurance company issued stock to the shareholders of the funeral home corporation. Id. The plaintiff, however, received no stock. Id. Years later, the plaintiff sued the resulting insurance company for the issuance of stock. Id. The plaintiff asserted that within the 20-year period the funeral home corporation had refiled its articles of incorporation, listing him as a shareholder. Id. at 321, 123 So.2d at 168. Nonetheless, this Court held that the doctrine of presumption of payment, or prescription, applied. Id. at 324, 123 So.2d at 171. The refiling of the articles of incorporation was merely an act of compliance with a regulatory requirement of the insurance commissioner, not a specific recognition of the plaintiffs rights as a shareholder. Id. at 322-23, 123 So.2d at 169-70 (“We have often stated that ‘the basic principle of prescription is not the mere lapse of time, but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears.’ ”) (emphasis added) (citation omitted). The insurance company paid no dividends to the plaintiff and mailed no notices of shareholder meetings to him. Id. at 324, 123 So.2d at 171. Likewise, the plaintiff made no inquiries regarding his stock. Id. For 20 years, neither the plaintiff nor the insurance company had made an overt display of the customary indicia of ownership of the stock. Id. at 324, 123 So.2d at 171-72. Thus, this Court presumed the stock to have been issued to the plaintiff and refused to enforce a claim that the plaintiff himself had not actively pursued. Id.
In Owens v. Bank of Brewton, 53 Ala.App. 529, 302 So.2d 114 (1974), executors brought an action against a bank for the balance of a passbook savings account into which the decedent had made a deposit 40 years earlier. The Court of Civil Appeals held: “[T]he doctrine of prescription or presumption of payment is that the lapse of twenty years, without recognition of right, or admission of liability, operates as an absolute rule of repose,” and that “‘This rule of repose “has been declared applicable to all kinds of debts and pecuniary obligations.’”” Id. at 533, 302 So.2d at 116 (emphasis added) (citations omitted). Accord Eatman v. Goodson, 262 Ala. 242, 249, 78 So.2d 625, 631 (1954) (holding that the basic principle of prescription is not the mere lapse of time, but the lapse of time within which no recognition of a subsisting and continuing right or obligation appears). Although the bank had maintained all records as required by law, it had no record of the decedent’s savings account. Owens, 53 Ala.App. at 530, 302 So.2d at 115. For 20 years, neither the decedent nor the bank had made an overt display of the customary indicia of the decedent’s asserted ownership of the savings account. Id. at 533, 302 So.2d at 117 (stating that “there had been no recognition or admission of the indebtedness by [the] defendant or ... claim of or demand for payment by [the] plaintiffs ... or any activity [in] such account” for over 20 years) (emphasis added). Thus, the Court of Civil Appeals presumed the savings account to have been paid in full to the decedent and refused to enforce a claim that the decedent himself had not actively pursued.
The automatic renewal feature of the CD, relied on by the Court of Civil Appeals in this *17 present case, in no way modifies the applicability of the doctrine of presumption of payment. The 20-year period begins to run when “there is at least constructive notice of a potential claim.” Oehmig v. Johnson, 638 So.2d 846, 851 (Ala.1994). Accord Veitch v. Woodward Iron Co., 200 Ala. 358, 363, 76 So. 124, 129 (1917) (stating that the doctrine of presumption of payment requires acquiescence and that “[acquiescence involves knowledge of the facts which entitle [one] to relief, and manifests a want of diligence”); Snodgrass, 176 Ala. at 280, 58 So. at 201 (stating that the presumption period expired 20 years after the claimants “might have demanded an accounting”). Richerson obviously had notice of his potential claim for the balance of the renewable CD when he inquired concerning the lack of an interest statement for 1972, but failed to inquire when he received no interest statement for 1973. See Owens, 53 Ala.App. at 533, 302 So.2d at 117 (noting that the presumption-of-payment period expired 20 years after the depositor had received no correspondence from the bank concerning his savings account). Thus, the 20-year period began to run in February 1974, by which time Richer-son should have received an account statement, a tax statement, and a renewal notice from the Bank.
Just as the automatic renewal feature of the CD did not prevent the 20-year period from starting to run, the lack of a requirement to demand payment did not prevent the 20-year period from expiring. It is the customary indicia of the asserted relationship, not the absence of a requirement to demand payment at a time certain, that is the controlling factor under our case law. In Snodgrass, 176 Ala. at 280, 58 So. at 202, there was no requirement that the siblings demand an accounting, but the doctrine of presumption of payment still applied. In Ballenger, 271 Ala. at 318, 123 So.2d at 166, there was no requirement that the plaintiff demand payment of a dividend from the insurance company, but the doctrine of presumption of payment still applied. In Owens, 53 Ala.App. at 529, 302 So.2d at 114, there was no requirement that the decedent demand payment of his savings account from the bank, but the doctrine of presumption of payment still applied.[2]
Renewable CDs, like property subject to fiduciary administration, mortgage debts, stock certificates, and savings accounts, engender several customary indicia of ownership. First, federal tax law requires the Bank to send tax-reporting forms (i.e., Form 1099-INTs) to holders of CDs that earn interest during the calendar year. See 26 U.S.C. § 6049(a) (requiring obligors to report interest paid to or accrued by the depositor, on Internal Revenue Service forms). Yet, for more than 20 years, the Bank never sent a tax-reporting form to Richerson. Second, Alabama law requires banks to send renewal statements to holders of renewable CDs. Ala.Code 1975, § 5-5A-36 (requiring banks to mail written notices to the holder of a CD within five days preceding the annual renewal date). Yet, for more than 20 years, the Bank never sent a renewal notice to Richerson. Third, under Alabama law a depositor may generally demand payment of a CD at any time, with interest- penalty, or on the renewal date without interest penalty. Ala.Code 1975, § 7-3-118 cmt. 4. Yet, for more than 20 years, Richerson never demanded payment or made any other inquiry as to the status of his CD. In addition, as in Owens, 53 Ala.App. at 530, 302 So.2d at 115, although the Bank maintains all records required by law, it has no record of Richerson’s CD.[3] For over 20 years, neither Richerson nor the Bank made any overt display of the *18 customary indicia of Richerson’s asserted ownership of the CD. Thus, under nearly a century and a half of precedent, represented by Snodgrass, Spencer, Ballenger, and Owens, supra, and unaltered by the Legislature, this Court should presume that the Bank paid the balance due on the CD and should refuse to enforce the claim that Richerson himself did not pursue for more than 20 years. Faced with indistinguishable precedents, the majority offers no explanation for refusing to overturn the abandonment of established law by the Court of Civil Appeals, nor does it clearly signal what other debtors it will subject to stale claims, supported by incomplete evidence. The problems caused by the abandonment of nearly a century and a half of precedent will reach far beyond the payment of Richerson’s CD. By allowing the Court of Civil Appeals to change Alabama law, without warning or credible rationale, the majority of this Court effectively requires individuals and businesses to ignore current law regarding the retention of records and to maintain records in perpetuity.[4] More troubling, however, is the effect of the decision on the credibility of judicial decisions concerning the settlement of personal property claims. By requiring the adjudication of claims after more than two decades, during which time neither of the parties made an overt display of any of the customary indicia of the asserted relationship, the majority’s inaction effectively imposes on Alabama courts “the necessity of adjudicating rights so obscured by the lapse of time and the accidents of life, that the attainment of truth and justice is next to impossible.” Harrison, 54 Ala. at 563-64.
I dissent.
MADDOX, J., concurs.

. Judge Crawley, joined by Judge Thompson, dissented, stating that the doctrine of presumption of payment had been applied to the claim for payment of a savings account, Owens v. Bank of Brewton, 53 Ala.App. 529, 302 So.2d 114 (1974), and that it should also apply to the claim for payment of a certificate of deposit.

. I also note that in Roach v. Cox, 160 Ala. 425, 49 So. 578 (1909), this Court held that the 20-year period is not tolled for war, infancy, or impossibility of suit due to the defendant's absence. Just as with war, infancy, and impossibility of suit, the automatic renewal feature leaves unaltered the requirement that there be some showing of the customary indicia of Richerson's asserted ownership of the CD within the 20-year period.

. I note that even where a security has a term that exceeds 20 years, there are customary indi-cia of ownership that should be displayed. For example, for indenture securities, which may have a term of more than 20 years, obligors are required to maintain a list of bondholders — those entitled to creditor rights with the obligor. See 15 U.S.C. § 77111 (1988) (requiring certain obli-gors to furnish a list of persons to whom money is owed). Similarly, for stock, which may be held for more than 20 years, the corporation is *18 required to maintain a list of shareholders— those entitled to ownership rights in the corporation. See Ala.Code 1975, § 10-2B-7.20 (requiring corporations to prepare an alphabetical list of shareholders before each shareholder meeting).

. Further, as pointed out in the brief of the amicus curiae, the majority allows Alabama’s escheat law to be severely undercut. See Ala. Code 1975, § 35-12-22(3) (providing that demand instruments are presumed abandoned if outstanding for more than five years). When, if ever, can a renewable CD, a passbook savings account, or any financial instrument escheat to the state?