825 So.2d 758 (2002)
Ex parte LIBERTY NATIONAL LIFE INSURANCE COMPANY.
(In re Charles Hudson and Alice Hudson v. Liberty National Life Insurance Company et al.)
1002041.
Supreme Court of Alabama.
January 18, 2002.
*760 Matthew H. Lembke, Michael R. Pennington, Philip H. Butler, and Scott Burnett Smith of Bradley, Arant, Rose & White, L.L.P., Birmingham; William J. Baxley, William C. Barclift III, and David McKnight of Baxley, Dillard, Dauphin & McKnight, Birmingham; and Floyd D. Gaines of Gunther Gaines, L.L.C., Birmingham, for petitioner.
Jere L. Beasley, W. Daniel Miles III, and J.P. Sawyer of Beasley, Allen, Crow, Methvin, Portis & Miles, P.C., Montgomery, for respondents.
Robert A. Huffaker of Rushton, Stakely, Johnston & Garrett, P.A., Montgomery, for amicus curiae Business Council of Alabama, in support of the petition for writ of mandamus.
J. Mason Davis of Sirote & Permutt, P.C., Birmingham; Victoria E. Fimea of American Council of Life Insurers, Washington, D.C.; and Lee E. Baines, Jr., of Maynard, Cooper & Gale, P.C., Birmingham, for amici curiae American Council of Life Insurers and Association of Alabama Life Insurance Companies, in support of the petition for writ of mandamus.
W. Lewis Garrison, Jr., F. Page Gamble, and W.A. Hopton-Jones, Jr., of Garrison, Scott, Gamble & Rosenthal, P.C., Birmingham, for amicus curiae National Association for the Advancement of Colored People, Alabama State Conference of Branches ("NAACP"), in support of the respondents.
PER CURIAM.
Liberty National Life Insurance Company ("Liberty National") petitions this Court for a writ of mandamus directing the trial court to grant Liberty National's motion to dismiss or for a summary judgment, or to certify for interlocutory appeal the trial court's denial of that motion. Liberty National claims that we should issue the writ of mandamus because, it says, the trial court clearly erred in failing to hold that the plaintiffs' claims were barred by Alabama's 20-year rule of repose. We deny the writ.
The plaintiffs, Charles Hudson and Alice Hudson, are African-Americans who purchased *761 industrial-insurance policies from Service Insurance Company (now Liberty National). In their complaint, which was filed on February 28, 2001, the Hudsons allege various state-law claims stemming from their purchase of the Liberty National policies. Specifically, the Hudsons allege breach of contract; conversion; negligence; wantonness; negligent and wanton hiring, training, and supervision; fraud; breach of fiduciary duty; and the tort of outrage. The Hudsons appear to base their claims, to a large extent, on Liberty National's alleged past practices (i.e., practices alleged to have begun in the 1940s) of selling industrial-insurance policies to African-Americans at rates different from the rates it charged white policyholders for the same policies.
Liberty National filed a motion entitled "Consolidated Motion to Dismiss, or in the Alternative for Summary Judgment." In its motion, Liberty National argued, among other things, that the Hudsons' claims were absolutely barred by Alabama's 20-year rule of repose. Attached in support of the motion was the affidavit of Anthony McWhorter, president of Liberty National, and various exhibits referred to in the affidavit. Included in these exhibits was information related specifically to the Hudsons' policies and generally to Liberty National's past and current policies and procedures, as well as various documents purporting to demonstrate that the use of race-distinct mortality rates in setting insurance rates in the early to mid-twentieth century was extremely common and well-known in the public arena.
The Hudsons did not file a brief in response to Liberty National's motion. Instead, the Hudsons filed (1) a motion to strike McWhorter's affidavit and its attached exhibits pursuant to Rule 12(f), Ala. R. Civ P., and (2) a motion to allow discovery and to continue Liberty National's motion pursuant to Rule 56(f).
On July 16, 2001, the trial court, treating the motion as a motion to dismiss under Rule 12(b)(6), summarily denied the motion and ordered the parties to proceed with discovery. The trial court's order stated that because the court was treating Liberty National's motion as a motion to dismiss only, Liberty National's motion for a summary judgment and the Hudsons' Rule 56(f) motion were moot "at this stage of the proceedings." The court never ruled on the Hudsons' Rule 12(f) motion.
On August 16, 2001, the trial court denied Liberty National's request to certify the ruling for interlocutory appeal under Rule 5, Ala. R.App. P., as well as Liberty National's request to stay the proceedings pending this Court's review. We granted Liberty National's emergency motion for a stay of the trial court proceedings, and we now consider Liberty National's petition for a writ of mandamus.

I. Liberty National's Request for Mandamus Relief
Liberty National claims that it is entitled to a writ of mandamus based on the trial court's denial of its motion to dismiss or for a summary judgment. In order for a writ of mandamus to properly issue, Liberty National must demonstrate: "(1) a clear legal right in the petitioner to the order sought; (2) an imperative duty on the respondent to perform, accompanied by a refusal to do so; (3) the lack of another adequate remedy; and (4) the properly invoked jurisdiction of the court." Ex parte Ridgeview Health Care Ctr., Inc., 786 So.2d 1112, 1115 (Ala.2000). Subject to certain narrow exceptions not applicable here, we have held that, because an "adequate remedy" exists by way of an appeal, the denial of a motion to dismiss or a motion for a summary judgment is not *762 reviewable by petition for writ of mandamus. See Ex parte Jackson, 780 So.2d 681, 684 (Ala.2000) (quoting Ex parte Empire Fire & Marine Ins. Co., 720 So.2d 893, 894 (Ala.1998), quoting in turn Ex parte Central Bank of the South, 675 So.2d 403 (Ala.1996), for the general rule that "`"a writ of mandamus will not issue to review the merits of an order denying a motion for a summary judgment,"'" but noting that narrow exceptions exist, such as in cases involving governmental immunity); Ex parte Newco Mfg. Co., 481 So.2d 867, 870 (Ala.1985) ("In its Mandamus petition as addressed to its motion for summary judgment based on the statute of repose contained in the Tennessee products liability act, Newco seeks `to do by mandamus that which can be done on appeal.'" (quoting Ex parte South Carolina Ins. Co., 412 So.2d 269 (Ala.1982))); see also Ex parte Mobile County Dep't of Human Res., 815 So.2d 527 (Ala.2001) (issuing writ of mandamus to reverse an order denying a motion to dismiss asserting defense of immunity); Ex parte Alabama Dep't of Forensic Sciences, 709 So.2d 455 (Ala.1997) (permitting review by petition for a writ of mandamus in case involving immunity). Because the relief Liberty National seeks in its mandamus petition can be adequately attained by an appeal, Liberty National is not entitled to a writ of mandamus to review the denial of its motion.
Liberty National also claims that it is entitled to a writ of mandamus based on the trial court's refusal to certify the denial of Liberty National's motion for appeal pursuant to Rule 5, Ala. R.App. P. Under Rule 5, a trial judge should certify for appeal an interlocutory order when that order "involves a controlling question of law as to which there is substantial ground for difference of opinion, [and when] an immediate appeal from the order would materially advance the ultimate termination of the litigation and ... would avoid protracted and expensive litigation." The trial court's action in certifying an order pursuant to Rule 5 is discretionary and is subject to correction by mandamus on a showing of a clear abuse of that discretion. Ex parte Showers, 812 So.2d 277 (Ala.2001).
In this case, we do not find that the trial judge abused his discretion in refusing to certify for appeal his ruling on Liberty National's motion, because he expressly ruled only on Liberty National's motion to dismiss under Rule 12(b)(6); he expressly refused to consider at that time Liberty National's motion for a summary judgment or any materials related to that motion.[1] Looking only at the allegations in the complaint, one cannot determine when the Hudsons purchased their policies. Liberty National did not, and cannot, contend that the complaint states when the policies were purchased, and, as discussed below, the issue of repose in this case will depend greatly upon when those policies were purchased. Because the trial court did not consider that information in conducting its narrow 12(b)(6) analysis, an immediate appeal from the trial court's denial of Liberty National's motion to dismiss based on the theory of repose would not materially advance the ultimate termination *763 of the litigation. This is true because without facts concerning the purchase dates of the policies, the repose issue could not be resolved on appeal. The trial court's refusal to certify for appeal its denial of Liberty National's motion to dismiss was not an abuse of discretion; therefore, mandamus relief is not appropriate.
We note that Liberty National's motion for a summary judgment based on the rule of repose is still pending before the trial court. Furthermore, judging from the various briefs filed by the parties and the amici curiae, we note that there is some confusion concerning the application of Alabama's rule of repose. Because this issue is, as the parties admit, one of great importance to the proper resolution of this case and similar cases, we take this opportunity to assist the parties (as well as the bench and bar) by clarifying the law concerning Alabama's rule of repose.

II. The Rule of Repose
Since 1858, causes of action asserted in Alabama courts more than 20 years after they could have been asserted have been considered to have been extinguished by the rule of repose. See Rector v. Better Houses, Inc., 820 So.2d 75, 77 n. 2 (Ala. 2001) ("Since this Court decided McArthur v. Carrie's Administrator, 32 Ala. 75 (1858), Alabama has followed a rule of repose, or rule of prescription, of 20 years."). The well-established rule recognizes the realities that surround the inverse relationship between the passage of time and the ability to fairly and justly resolve disputes:
"As a matter of public policy, and for the repose of society, it has long been the settled policy of this state, as of others, that antiquated demands will not be considered by the courts, and that, without regard to any statute of limitations, there must be a time beyond which human transactions will not be inquired into.... It is necessary for the peace and security of society that there should be an end of litigation, and it is inequitable to allow those who have slept upon their rights for a period of 20 years, after they might have [brought an action], and after, as is generally the case, the memory of transactions has faded and parties and witnesses passed away, to [bring an action]. The consensus of opinion in the present day is that such presumption is conclusive, and the period of 20 years, without some distinct act in recognition of the [claimant's right], a complete bar; and, as said in an early case, `the presumption rests not only on the want of diligence in asserting rights, but on the higher ground that it is necessary to suppress frauds, to avoid long dormant claims, which, it has been said, have often more of cruelty than of justice in them, that it conduces to peace of society and the happiness of families, "and relieves courts from the necessity of adjudicating rights so obscure by the lapse of time and the accidents of life that the attainment of truth and justice is next to impossible."'"
Snodgrass v. Snodgrass, 176 Ala. 276, 280-81, 58 So. 201, 201-02 (1912); see also Oxford v. Estes, 229 Ala. 606, 611, 158 So. 534, 538 (1934) ("Failure of memory, loss of evidence, death of parties, the probability that the whole truth cannot be ascertained and justice done, enter into the equation as a reason for the rule [of repose].").
The rule of repose arose within the context of property disputes; however, the rationale underlying the rule is not so limited and, accordingly, the rule has been applied in other contexts, including those alleging tort claims. See Tierce v. Ellis, 624 So.2d 553, 554-55 (Ala.1993) (applying the rule to a paternity dispute); Ex parte *764 Grubbs, 542 So.2d 927, 930-31 (Ala.1989) (applying the rule in the context of a civil-rights violation claim under 42 U.S.C. § 1983); Barrett v. Wedgeworth, 518 So.2d 1256, 1257-58 (Ala.1987) (applying the rule to bar a claim that a divorce judgment had been procured by fraud); Ballenger v. Liberty Nat'l Life Ins. Co., 271 Ala. 318, 322, 123 So.2d 166, 169 (1960) (holding that a conversion claim was barred by the rule of repose, and stating that "[t]he rule has been applied to various situations but always consistently and unvariably"); see also Moore v. Liberty Nat'l Ins. Co., 108 F.Supp.2d 1266, 1274-75 (N.D.Ala.2000) (applying Alabama's rule of repose to bar claims virtually identical to the claims asserted in this case), aff'd, 267 F.3d 1209 (11th Cir.2001).
While the rule is similar to a statute of limitations, the rule of repose is not "dependent upon a statute and is broader in scope than a statute of limitations." Rector, 820 So.2d at 77 n. 2. The rule of repose is broader in scope than a statute of limitation in at least two ways.
First, the rule is based solely upon the passage of time, see Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982) ("[T]he only element of the rule of repose is time. It is not affected by the circumstances of the situation, by personal disabilities, or by whether prejudice has resulted or evidence obscured.")(emphasis added), and is not based upon concepts of accrual, notice, or discoveryconcepts that are applicable to statutes of limitation. See Baugher v. Beaver Constr. Co., 791 So.2d 932, 934 n. 1 (Ala.2000) (noting that because the limitations period set forth in Ala.Code § 6-5-221(a) applicable to certain actions brought against architects, contractors, and engineersbegins to run "upon the substantial completion of the improvements, rather than upon the injury to the plaintiff's person or property or upon the accrual of the plaintiff's cause of action otherwise," the statute is a statute of repose rather than a simple statute of limitations.) (emphasis added); see Ballenger, supra, 271 Ala. at 322, 123 So.2d at 169 (stating that "[l]ack of notice is not sufficient to avert the application of the doctrine" of repose); Merrill v. Merrill, 260 Ala. 408, 411, 71 So.2d 44, 45-46 (1954) (noting that "absence of notice" does not control the application of the rule, and that "[n]otice does have influence on the question of laches, but not on [repose]"); see generally 54 C.J.S. Limitations of Actions § 4 (1987) ("A statute of repose, however, limits the time within which an action may be brought and is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered."). Instead, the "rule is couched in terms of the `running of the period against claims,' `absolute bar to unasserted claims,' `lack of diligence in asserting rights,' `sleeping upon their rights,' etc." and is accordingly based upon "the pre-existing right to assert a claim." Boshell, 418 So.2d at 92. Therefore, the 20-year period begins to run against claims the first time those claims could have been asserted,[2] regardless of the claimant's notice of a claim.[3]See Moore, *765 supra, 108 F.Supp.2d at 1275 ("Application of the rule of repose has only one elementthe passage of twenty years time from the moment that the actions giving rise to the claim occurredand, if that time has elapsed, no claim can be pursued.").
Second, the rule is broader than a statute of limitation in that "[w]hile a statute of limitations generally is procedural and extinguishes the remedy rather than the right, ... repose is substantive and extinguishes both the remedy and the actual action." 51 Am.Jur.2d Limitation of Actions § 32 (2000); see Boshell, supra, 418 So.2d at 92; Oxford, supra, 229 Ala. at 611, 158 So. at 538 ("It is not a presumption merely, but a rule of law, raising an absolute bar to ancient causes of action."); Green v. Dixon, 727 So.2d 781, 784 (Ala. 1998) ("`statutes of limitations affect the remedy'") (quoting Odom v. Averett, 248 Ala. 289, 291, 27 So.2d 479, 480 (1946)); Jefferson County Sav. Bank v. Ben F. Barbour Plumbing & Elec. Co., 191 Ala. 238, 247, 68 So. 43, 46 (1915)("Statutes of limitation go to the remedy, not the rights of parties."); Moore, supra, 108 F.Supp.2d at 1275 ("While a statute of limitations is a procedural device that sets forth the time period within which an action is deemed to have accrued and that is capable of being waived or tolled, a rule of repose is substantive doctrine of the State, eliminating a cause of action, irrespective of its date of accrual.").
The difference between the rule of repose and a statute of limitation is further demonstrated by the rule's sole exception. We have stated that "[t]he only circumstance that will stay the running of the 20-year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim." Boshell, supra, 418 So.2d at 92 (emphasis added). The "recognition of the existence of the claimant's right" by the defendant must be express and explicit; it will not be implied. See Snodgrass, supra, 176 Ala. at 280, 58 So. at 202 (noting that a "distinct act in recognition" of a claimant's right is required in order to prevent the rule of repose from extinguishing a cause of action) (emphasis added).

III. Conclusion
As stated above, Liberty National's petition for a writ of mandamus is due to be denied. However, given our review of the materials submitted by the parties and our clarification of Alabama's rule of repose, we note that Liberty National's motion for a summary judgment based on repose is ripe for adjudication. We have every confidence that the trial court will address this issue in an efficient and judicious manner.
PETITION DENIED.
HOUSTON, BROWN, and STUART, JJ., concur.
*766 JOHNSTONE and HARWOOD, JJ., concur in the rationale in part and concur in the judgment.
MOORE, C.J., and LYONS and WOODALL, JJ., concur in the result.
SEE, J., recuses himself.
JOHNSTONE, Justice (concurring in the rationale in part and concurring in the judgment).
I concur in the judgment and, but for one exception, in the holdings in the main opinion. Respectfully, I do not agree to the language in the main opinion stating:
"Under Rule 5, [Ala. R.App. P.,] a trial judge should certify for appeal an interlocutory order when that order `involves a controlling question of law as to which there is substantial ground for difference of opinion, [and when] an immediate appeal from the order would materially advance the ultimate termination of the litigation and ... would avoid protracted and expensive litigation.' The trial court's action in certifying an order pursuant to Rule 5 is discretionary and is subject to correction by mandamus on a showing of a clear abuse of that discretion. Ex parte Showers, 812 So.2d 277 (Ala.2001)." 825 So.2d at 762. (Emphasis added.)
Ex parte Showers would not be authority for the proposition that a trial judge's refusal to endorse an interlocutory appeal is subject to mandamus review. Ex parte Showers did not so hold. Indeed, Ex parte Showers says, "Showers cites no authority, and we are aware of none, that supports her position that she is entitled to a writ of mandamus compelling the trial court ... to issue a statement pursuant to Rule 5(a), Ala. R.App. P., allowing her to seek an appeal by permission." 812 So.2d at 281.
A party cannot properly petition for permission to appeal pursuant to Rule 5 unless the prerequisites exist "in the [trial] judge's opinion." Rule 5(a). No appellate court could properly order a trial judge to form or to hold any opinion. "[T]he writ of mandamus will not issue to compel a trial court to exercise its discretion in a particular manner." Ex parte Weaver, 781 So.2d 944, 949 (Ala.2000). Because, in the case before us, we are denying the petition for a writ of mandamus and are not revising the trial judge's refusal to endorse the interlocutory appeal, this reservation of mine does not affect my concurrence in our judgment.
HARWOOD, J., concurs.
HARWOOD, Justice (concurring in the rationale in part and concurring in the judgment).
I join Justice Johnstone's special writing. His sole point of disagreement with the main opinion is the statement in the opinion that "[t]he trial court's action in certifying an order pursuant to Rule 5 is discretionary and is subject to correction by mandamus on a showing of a clear abuse of that discretion. Ex parte Showers, 812 So.2d 277 (Ala.2001)." 825 So.2d at 762. I agree with Justice Johnstone that Ex parte Showers does not stand for the affirmative proposition that a trial court's action in certifying an order pursuant to Rule 5 is discretionary and is subject to correction by mandamus on a showing of a clear abuse of that discretion.
I write in addition to what Justice Johnstone has written, however, because, as the author of Ex parte Showers, I feel an obligation to put its holdings in the proper perspective. In Showers, the plaintiff, Showers, sought an interlocutory review of a summary judgment in favor of one of the defendants. The trial judge denied her requests that he render the summary judgment appealable either by giving it a Rule 54(b), Ala. R. Civ. P., certification of *767 finality, or by providing the endorsement required by Rule 5, Ala. R.App. P., for a permissive appeal. Showers then petitioned this Court for a writ of mandamus directing the trial court to so act.
As Justice Johnstone notes in his special writing, our analysis of the request began with the statement that "Showers cites no authority, and we are aware of none, that supports her position that she is entitled to a writ of mandamus compelling the trial court either to issue a Rule 54(b), Ala. R. Civ. P., certification of finality, or to issue a statement pursuant to Rule 5(a), Ala. R.App. P., allowing her to seek an appeal by permission." 812 So.2d at 281. We then pointed out that this failure to cite any authority violated Rules 21(a) and 28(a)(5), Ala. R.App. P., and "provide[d] this Court an ample basis for refusing to consider those arguments, and her petition could be properly denied on that basis." 812 So.2d at 281. We went on to point out, however, that both a Rule 54(b) certification of finality and a Rule 5(a) statement of the trial judge's opinion that the interlocutory order met all of the criteria prescribed by Rule 5(a) "are discretionary with the trial court." 812 So.2d at 282. The opinion then stated the following, which although phrased in the negative, is now relied on by the main opinion as authority for an affirmative proposition:
"Because the trial court's action on either rule is discretionary and especially in the absence of any showing of a clear abuse of that discretion, Showers has shown no `clear legal right' to the relief she requests. Ex parte Empire Fire & Marine Ins. Co. [720 So.2d 893 (Ala. 1998)]. Showers's arguments on this point are without merit."
812 So.2d at 282.
The citation to Ex parte Empire Fire & Marine Insurance Co., 720 So.2d 893 (Ala. 1998), was simply a reference to the well-established requirement, reiterated in that case, of a showing of a "clear legal right" to mandamus relief, that language having been quoted from Ex parte Empire Fire & Marine Insurance Co. earlier in the Showers opinion. Admittedly, the phrase "and especially in the absence of any showing of a clear abuse of that discretion," could have, and should have, been couched in more restrictive language. Nevertheless, the phrase was not intended to stand as precedent for a reverse statement of it as an affirmative proposition, as now expressed in the main opinion because, as already noted, the Showers opinion stated clearly that the Court was aware of no authority that supported Showers's position that she was entitled to obtain from the trial judge a statement pursuant to Rule 5(a) that "in the judge's opinion" the case met of that Rule's criteria for an appeal by permission.
I offer these further observations with respect to the federal counterparts to our Rule 5-28 U.S.C.A. § 1292(b) and Rule 5 of the Federal Rules of Appellate Procedure. Enacted prior to our adoption of Rule 5, Ala. R.App. P., § 1292(b) states that "[w]hen a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order." Thereafter, the federal court of appeals may "in its discretion" permit an appeal to be taken from the order. Rule 5(b)(1)(D), Fed. R.App. P., prescribes that a petition for permission to appeal must include, among other things, "the reasons why the appeal should be allowed and is authorized by a statute or rule." Rule 5(b)(1)(E)(ii) of the *768 Federal Rules states that the petition must have attached to it "any order stating the district court's permission to appeal or finding that the necessary conditions are met."
Early on in their interpretation and application of § 1292(b), the federal courts of appeal frequently stated that that section's general purpose was to provide interlocutory appeals in exceptional cases in order "to avoid protracted and expensive litigation." e.g., Paschall v. Kansas City Star Co., 605 F.2d 403, 406 (8th Cir.1979); In re Cement Antitrust Litigation, 673 F.2d 1020, 1026 (9th Cir.1981), aff'd, 459 U.S. 1190, 103 S.Ct. 1173, 75 L.Ed.2d 425 (1983). Obviously, those sentiments were shared by this Court when it adopted Rule 5, Ala. R.App. P., because it included in that rule not only the § 1292(b) requirements that the trial judge state it to be his opinion that the order in question involves "a controlling question of law as to which there is substantial ground for difference of opinion" and that "an immediate appeal from the order may materially advance the ultimate termination of the litigation," but also the provision, not explicit in § 1292(b), that in trial judge's opinion "the appeal would avoid protracted and expensive litigation."
In discussing the possibility of the use of the writ of mandamus to compel § 1292(b) certification by a federal district court, the authors of the well-regarded Wright & Miller treatise on federal practice and procedure have had this to say:
"Participation of the district court in certifying permissive interlocutory appeals is the indispensable first step of § 1292(b) appeal. This step was not included in the original proposal studied by the Judicial Conference. The original proposal would have allowed the court of appeals to authorize an appeal in its discretion, if determined to be `necessary or desirable to avoid substantial injustice.' This proposal was rejected for fear that it `would unduly encourage fragmentary and frivolous appeals.' The requirement that the district judge certify the order was deliberately suggested, and deliberately adopted to secure an initial judgment on the desirability of appeal by the trial judge as the person most familiar with the litigation. The initial determination that appeal is desirable is confided to the discretion of the district judge, relying on the criteria specified in the statute. Many cases have ruled that no appeal is available unless the district judge enters the order, and they are right both in terms of the clear language of the statute and the clear purpose of its history.... Efforts to persuade a court of appeals to issue mandamus to compel certification by the district judge have generally proved unsuccessful. Although a court of appeals may be tempted to assert mandamus power to compel certification, the temptation should be resisted. The district judge is given authority by the statute to defeat any opportunity for appeal by certification, in deference to familiarity with the case and the needs of case management. Special needs for review should be met by other means. Amendment of the statute to permit application to the court of appeals after refusal by the district court might be a wise reform if undertaken by Congress, but not by the courts."
16 Charles Alan Wright et al., Federal Practice and Procedure 3929 (1977; supp. 2001) (footnotes omitted).
With reference to its statement that "[a]lthough a court of appeals may be tempted to assert mandamus power to compel certification, the temptation should be resisted," the Wright treatise cites, by *769 way of footnote, Fernandez-Roque v. Smith, 671 F.2d 426, 431 (11th Cir.1982), in which the United States Court of Appeals for the Eleventh Circuit concluded that "this case presents the truly `rare' situation in which it is appropriate for this court to require certification of a controlling issue of national significance." (Emphasis supplied.)
I likewise can envision scenarios in which this Court might be presented with a situation of such compelling importance (comparable at the State level to "a controlling issue of national significance") that we could be persuaded to recognize the trial judge's failure to certify a case for Rule 5 review to be an abuse of discretion, but such a circumstance would be extraordinarily rare.
LYONS, Justice (concurring in the result).
I would refrain from addressing the merits of the rule-of-repose defense until the issue is before us. I anticipate that the trial court will now expeditiously dispose of matters dealing with the issue of repose that do not involve any disputed facts. Any ruling on that issue, whether favorable to the Hudsons or to Liberty National, can be brought before us in short order pursuant to either Rule 5, Ala. R.App. P., or Rule 54(b), Ala. R. Civ. P., as appropriate.
MOORE, C.J., and WOODALL, J., concur.
NOTES
[1] We treat the trial judge's express refusal to consider any materials pertinent to the summary-judgment motion, including McWhorter's affidavit and the exhibits in support of the summary-judgment motion, as an "exclusion" of those materials for the purpose of examining solely the allegations in the complaint pursuant to Rule 12(b)(6). Therefore, because the trial court excluded those materials with regard to its denial of Liberty National's motion to dismiss, the trial court was under no duty to treat the motion as a motion for a summary judgment under Rule 12(b).
[2] In some instances, this point in time may be the same as the date of the "accrual" of a claim. However, as stated above, repose does not depend on "accrual," because the concept of accrual sometimes incorporates other factors, such as notice, knowledge, or discovery. For example, see Ala.Code 1975, § 6-2-3 (providing that a fraud claim does not accrue "until the discovery by the aggrieved party of the fact constituting the fraud").
[3] The Hudsons rely on Oehmig v. Johnson, 638 So.2d 846, 851 (Ala.1994), wherein this Court stated, in dicta, that "[t]he time for the rule of repose cannot run until there is at least constructive notice of a potential claim." This statement, which was not supported by citation to any authority, is inconsistent with the well-established understanding of the rule of repose described above. Furthermore, Oehmig was not decided on the basis of this incorrect statement; rather, Oehmig was decided on the basis that the rule of repose could not be used offensively (in a manner similar to the concept of adverse possession) "against one with valid record title by one who clearly does not have title" in order to divest the title owner of property. 638 So.2d at 850. For those reasons, the dicta from Oehmig does not control our decisions. See Ivey v. Wiggins, 276 Ala. 106, 109, 159 So.2d 618, 620 (1964) (noting that statements that are dicta are not controlling); see also Alexander v. Sandoval, 532 U.S. 275, 121 S.Ct. 1511, 1517, 149 L.Ed.2d 517 (2001) (stating that "this Court is bound by holdings, not language").