858 So.2d 950 (2003)
Ex parte LIBERTY NATIONAL LIFE INSURANCE COMPANY.
(In re Thomas E. Deas v. Liberty National Life Insurance Company et al.)
1020057.
Supreme Court of Alabama.
March 14, 2003.
*951 D. Brent Baker and Ross A. Frazer of Frazer, Greene, Upchurch & Baker, L.L.C., Mobile, for petitioner.
*952 Frederick P. Gilmore of Gilmore Law Office, Grove Hill, for respondent.
HOUSTON, Justice.
Liberty National Life Insurance Company ("Liberty National") petitions for a writ of mandamus directing the Clarke Circuit Court to permit Liberty National to amend its answer to the complaint filed against it by Thomas Deas. Liberty National seeks to add as an affirmative defense Alabama's 20-year rule of repose and contends that until our recent clarification of the rule of repose in Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala.2002),[1] Liberty National was justified in not asserting the rule as an affirmative defense and that it should have been allowed to amend its answer after we released our opinion in Ex parte Liberty National. We agree, and we grant the petition and issue the writ.
On June 1, 1958, Thomas Deas purchased a $5,000 whole-life policy from Liberty National. According to Deas, the policy was to be "paid up" in 20 years. Deas also alleges that on or about May 15, 1978, he received notice that his policy was in fact "paid up."
On December 22, 1978, a $3,000 loan was taken against the policy. Deas claims that he had nothing to do with the loan, and that he never received either the check Liberty National issued in his name or the $3,000. The check was cashed or deposited in December 1978. Deas alleges that he first learned in March 1999 that in 1978 a loan had been taken against his policy for $3,000 and had not been repaid, leaving only a small amount of value in the policy.
Deas sued Liberty National in the Clarke Circuit Court on February 13, 2001, alleging fraud, negligence, wantonness, and conversion. Each of Deas's claims is based upon allegedly wrongful actions of Liberty National that occurred on or before December 1978.
On April 3, 2001, Liberty National filed an answer; that answer did not include the rule of repose as an affirmative defense. On January 18, 2002, we released our decision in Ex parte Liberty National, which clarified the law on the rule of repose. On February 22, 2002, Liberty National filed a motion for a summary judgment, asserting for the first time the rule of repose as a defense to Deas's claims. Deas filed a response, arguing that, because the rule of repose is an affirmative defense,[2] it was deemed waived when Liberty National did not assert it in its answer.
At a March 20, 2002, hearing on the motion, Liberty National was granted a continuance so that it could reply to Deas's waiver argument. The next day, however, Liberty National filed a motion for leave to amend its answer to add the rule of repose as an affirmative defense. The trial court denied this motion on August 28, 2002. This petition followed.
A writ of mandamus, being a drastic and extraordinary remedy, will issue to correct a trial court's ruling regarding the amendment of pleadings only when it is shown that the trial court has exceeded its discretion. Rector v. Better Houses, Inc., 820 So.2d 75 (Ala.2001). For the reasons below, we hold that the trial court exceeded its discretion in refusing to allow Liberty National to amend its answer.
*953 Typically, if a party fails to plead an affirmative defense, that defense is deemed to have been waived. Robinson v. Morse, 352 So.2d 1355, 1356 (Ala.1977) (citing 5 Wright & Miller, Federal Practice & Procedure § 1278, pp. 339-52); see also Rule 8(c), Ala. R. Civ. P. However, there are exceptions to this rule, one of which is that an affirmative defense can be revived if a party is allowed to amend his pleading to add the defense. Piersol v. ITT Phillips Drill Div., Inc., 445 So.2d 559, 561 (Ala.1984) (stating that "where no actual prejudice to the opposing party is shown, and no undue delay is demonstrated, a court may permit the amendment of the answer to include a defense of the running of the period of the statute of limitations, though Rule 8(c) of the Alabama Rules of Civil Procedure requires such a defense to be pleaded as an affirmative defense").
Rule 15(a), Ala. R. Civ. P., reflects Alabama's liberal policy in favor of allowing amendments to pleadings:
"Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court's own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause. A party shall plead in response to an amended pleading within the time remaining for a response to the original pleading or within ten (10) days after service of the amended pleading, whichever period may be longer, unless the court orders otherwise."
However, the extent of the trial court's discretion in permitting amendments has not been precisely delineated and has been, at times, unclear.
We noted in Ex parte GRE Insurance Group, 822 So.2d 388, 390 (Ala. 2001), that under Rule 15 amendments to pleadings are to be "freely allowed" unless there exists some valid reason to deny them, such as "actual prejudice or undue delay":
"`"[R]efusal of an amendment must be based on a valid ground,"' Ex parte Bailey, 814 So.2d 867, 869 (Ala.2001) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975)) (emphasis omitted), such as `actual prejudice or undue delay.' Ex parte Thomas, 628 So.2d 483, 486 (Ala.1993)."
However, as evidenced by the placement of the phrase "freely allowed" in the text of Rule 15, that phrase applies only to those amendments sought "more than forty-two (42) days before the first setting of the case for trial." Rule 15, Ala. R. Civ. P. In that situation, a trial court has no discretion; it can deny a requested amendment only if there exists a "valid ground" for the denial, such as "actual prejudice or undue delay." Ex parte GRE Ins. Group, 822 So.2d at 390. In other words, the burden is on the trial court to state a valid ground for its denial of a requested amendment.
When, as here, the amendment is sought within the 42-day window, the trial court is free to deny a party leave to amend his or her pleading unless the party can demonstrate "good cause." Rule 15, Ala. R. Civ. P. The language of Rule 15 makes clear that upon a showing of "good cause" a trial court is not required to allow the amendment; after such a showing allowing the amendment becomes an option the trial court can choose. Id. ("... and leave shall be given only upon a showing *954 of good cause") (emphasis added).[3] However, in light of the overarching liberal policy of allowing amendments under Rule 15, the appropriate way to view the request for leave to amend, if a party demonstrates "good cause," is as though the request had been brought more than 42 days before trial, when the trial court does not have "unbridled discretion" to deny the leave to amend, but can do so only upon the basis of a "valid ground" as stated above. Ex parte Bailey, 814 So.2d 867, 869 (Ala.2001).
Here, there is no evidence of either actual prejudice or undue delay. The only possible prejudice to Deas stemming from allowing Liberty National to amend its answer that the parties have mentioned is the fact that Deas's claims might be extinguished. However, this fact, even if true, does not establish prejudice:
"`[I]t is obvious that an amendment, designed to strengthen the movant's legal position, will in some way harm the opponent.' Cuffy v. Getty Ref. & Mktg. Co., 648 F.Supp. 802, 806 (D.Del.1986). `In the context of a [Rule] 15(a) amendment, prejudice means that the nonmoving party "must show that it was unfairly disadvantaged or deprived of the opportunity to present facts or evidence which it would have offered had the ... amendments been timely."' Id. ... (Quoting Heyl & Patterson Int'l v. F.D. Rich Housing of Virgin Islands, Inc., 663 F.2d 419, 426 (3d Cir.1981).) `And by prejudice to the rights of the other party is meant, without loss to him other than such as may result from establishing the claim or defense of the party applying.' McDaniel v. Hoblit, 34 Wyo. 509, 515, 245 P. 295, 297 (1926)(emphasis added [in Ex parte GRE Ins. Group]). In other words, the defense asserted in the amended answer is not prejudicial, merely because it might constitute a meritorious defense to the plaintiff's claim."
Ex parte GRE Ins. Group, 822 So.2d at 391 (some emphasis original; some emphasis added); see also Bracy v. Sippial Elec. Co., 379 So.2d 582, 584 (Ala.1980) ("Where an amendment merely changes the legal theory of a case or adds an additional theory, but the new or additional theory is based upon the same set of facts and those facts have been brought to the attention of the other party by a previous pleading, no prejudice is worked upon the other party.").
Given the state of the law on April 3, 2001, when Liberty National filed its original answer, Liberty National was justified in not including the rule of repose as an affirmative defense. As Liberty National correctly points out in its brief to this Court, the case of Oehmig v. Johnson, 638 So.2d 846 (Ala.1994), provided Liberty National with a legitimate reason to believe that the rule of repose was not a viable defense. In Oehmig, 638 So.2d at 851, we stated in dicta that "the time for the rule of repose cannot run until there is at least constructive notice of a potential claim." Given Liberty National's apparent acknowledgment that Deas did not discover the problems with his policy until March 1999, the language from Oehmig precluded the use of the rule of repose as a defense. It was not until we clarified the law in Ex parte Liberty National[4] that it *955 became obvious that the rule of repose could be a viable defense to Deas's claims. We hold that Liberty National has demonstrated that it had "good cause" for not including the defense in its initial answer.
When Liberty National filed its motion to amend its answer, a trial date had been set, and the motion was filed within 42 days of the trial date. That trial date was then continued indefinitely, and at the time the trial court ruled on Liberty National's motion, the case had not been reset for trial. Liberty National filed its motion to amend approximately two months after our decision in Ex parte Liberty National. However, there is no indication that this delay was unreasonable or troublesome, or that the amendment, if allowed, will cause any undue delay in the resolution of the case. Cf. Rector, 820 So.2d at 77-78 (holding that the trial court did not exceed its discretion in refusing to allow an amendment to a complaint sought 7 months after the original complaint was filed and within 30 days of the original trial date, where the plaintiff had all of the information necessary to amend her complaint from the outset of the action); Walker v. Traughber, 351 So.2d 917, 922 (Ala.Civ.App.1977) (holding that the trial court did not exceed its discretion in denying a request to amend an answer to assert affirmative defenses where that request was made on the day the case was called for trial and where the requesting attorney had those defenses available to him from the outset of the action).
Clearly, then, had Liberty National's first response to our Ex parte Liberty National decision been to timely seek an amendment of its answer to add the rule of repose as an affirmative defense, it would have been entitled to do so. Furthermore, Liberty National's filing a motion for a summary judgment based on the rule of repose before asking for leave to amend its answer, while perhaps making denial of the summary judgment proper, does not in any way bar the trial court from allowing Liberty National to amend its answer, nor did it prejudice Deas.
Because we hold that Liberty National did demonstrate "good cause," and because we can find no evidence of actual prejudice or undue delay that would be caused by allowing Liberty National's requested amendment, we conclude that the trial court exceeded its discretion in denying Liberty National's motion for leave to amend. We issue the writ of mandamus and direct the trial court to grant Liberty National's motion for leave to amend its answer to include the rule of repose as an affirmative defense.
PETITION GRANTED; WRIT ISSUED.
SEE, BROWN, HARWOOD, WOODALL, and STUART, JJ., concur.
MOORE, C.J., and LYONS and JOHNSTONE, JJ., dissent.
LYONS, Justice (dissenting).
I join Justice Johnstone's well-supported discussion of the inadequacy of Liberty National's showing of good cause that might excuse it for failing to include the affirmative defense of repose in its original answer filed on April 3, 2001.
*956 In Ex parte Liberty National Life Insurance Co., 825 So.2d 758 (Ala.2002), Liberty National attached to its petition for the writ of mandamus certain documents that had been presented to the trial court on April 30, 2001, just under a month after it filed its answer in this case, in support of its motion for a summary judgment on the ground of repose. Among these is an opinion of the Dallas Circuit Court in an action styled Moore v. Liberty National Life Insurance Co., Civil Action No. CV-00-306, in which the trial court held that the plaintiffs' claims were barred by Alabama's common-law doctrine of repose. The trial court stated as follows:
"The rule of repose is not subject to tolling of any kind, except where there have been affirmative acts of the defendant explicitly and unambiguously acknowledging the existence and validity of the plaintiff's claim. Ex parte Grubbs, 542 So.2d 927, 930-31 (Ala. 1989); Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982); Snodgrass v. Snodgrass, 176 Ala. 276, 280-81, 58 So. 201, 201-02 (1912)."
This order was entered on February 8, 2001, almost two months before the answer was filed in this proceeding. Our opinion in Ex parte Liberty National is entirely consistent with this settled principle of Alabama law. This Court held as follows:
"The difference between the rule of repose and a statute of limitation is further demonstrated by the rule's sole exception. We have stated that `[t]he only circumstance that will stay the running of the 20 year period of repose is a recognition of the existence of the claimant's right by the party defending against the claim.'"
825 So.2d at 765 (quoting Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982)).
Also instructive is Liberty National's posture in Ex parte Liberty National with respect to Oehmig v. Johnson, 638 So.2d 846, 851 (Ala.1994). In this proceeding, Liberty National views Oehmig as the obstacle to the availability of the defense of repose that justified its failure to assert the defense in this proceeding when it filed its original answer on April 3, 2001. However, in its reply brief in Ex parte Liberty National, Liberty National addressed Oehmig and the issue of the effect of lack of notice on the availability of the bar of repose as follows:
"Third, despite the Plaintiffs' suggestion otherwise (see Respondents' Br. at 14-18), the running of Alabama's rule of repose is not dependent on notice. As early as 1954, this Court announced that repose `is not controlled by an absence of notice.' Merrill v. Merrill, [260 Ala. 408, 411,] 71 So.2d 44, 45-46 ([]1954). Accord Eatman v. Goodson, [262 Ala. 242, 248,] 78 So.2d 625, 630 ([]1954) (observing Merrill `repudiated' the belief `that lack of notice would prevent the running of the prescriptive period'). In Ballenger v. Liberty National Life Insurance Company, [271 Ala. 318, 123 So.2d 166 (1960),] this Court reaffirmed Merrill, holding `[l]ack of notice is not sufficient to avert the application of the doctrine [of repose].' [271 Ala. 318, 322,] 123 So.2d 166, 169 ([]1960). The statement from Oehmig v. Johnson, [638 So.2d 846 (Ala.1994),] on which Plaintiffs rely is both dictabecause it is unnecessary to the Court's holding (on page 850) that `the rule of repose cannot be used against one with valid record title by one who clearly does not have title' and inconsistent with long-standing precedent of the rule of repose. 638 So.2d 846, 851 (Ala.1994), citing neither Merrill nor Ballenger)."
Liberty National's reply brief at p. 10-11. Standing in stark contrast is the following *957 statement at page 6 of Liberty National's petition in this proceeding:
"Liberty National filed its answer on April [3], 2001. At that point in time, the rule of repose did not appear to be a viable defense under Alabama law. See Oehmig v. Johnson, 638 So.2d 846 (Ala. 1994), abrogated by Ex parte Liberty National Life Ins. Co., [825 So.2d 758 (Ala.2002) ]."
Its dismissal of Oehmig v. Johnson as dictum in its brief filed in Ex parte Liberty National, while relying upon precedent "as early as 1954," belies Liberty National's present contention as to the state of the law on April 3, 2001. This Court's holding in Ex parte Liberty National simply mirrors the foregoing argument in the reply brief by citing Ballenger and Merrill and declining to permit Oehmig to control, as it was dictum "inconsistent with the well-established understanding of the rule of repose." 825 So.2d at 765 n. 3. I note parenthetically that the concept that Oehmig has been "abrogated" does not appear in this Court's opinion; it is a term employed solely by a publisher in describing the history of Ex parte Liberty National.
What appears to have happened in the instant case is a simple matter of Liberty National's various attorneys failing to get on the same page. But for recent cases such as Rector v. Better Houses, Inc., 820 So.2d 75 (Ala.2001), holding that delay alone is justification for refusing to permit the amendment of a complaint, I would have viewed more favorably Liberty National's attempt to excuse failure to amend on the candid admission of oversight, relying on Poston v. Gaddis, 372 So.2d 1099 (Ala.1979), dealing with allowance of leave to amend to assert an affirmative defense and citing National Distillers & Chemical Corp. v. American Laubscher Corp., 338 So.2d 1269 (Ala.1976), in which this Court held that neither long delay nor the fact that a proposed amendment is motivated by counsel's afterthought as to the best theory upon which to proceed suffice as reasons for denying leave to amend.
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The validity of the main opinion depends on two of its cardinal holdings. The first of these holdings is that Liberty National has demonstrated "good cause" for its failure to plead the rule of repose in its original April 3, 2001 answer. The second of these holdings is that the trial judge exceeded his discretion in denying, on the ground of "undue delay," the March 21, 2002 motion filed by Liberty National for leave to amend its answer to assert the rule of repose. I respectfully submit that both of these holdings are mistaken.
This dissent will demonstrate, first, that the excuse proffered by Liberty National for its failure to plead the rule of repose in the original April 3, 2001 answer is absolutely illusory. This dissent will demonstrate, second, that the holding of the main opinion on the issue of untimeliness conflicts with the holding by this Court on the same issue in the recent case of Rector v. Better Houses, Inc., 820 So.2d 75 (Ala. 2001). Under circumstances not materially distinguishable from the circumstances of the case now before us, Rector holds that seven months' delay in seeking to amend a pleading constituted such undue delay as was "in itself ground for denying an amendment." 820 So.2d at 78. The delay in the case now before us was nearly a full year.
In petitioning us for a writ of mandamus, Liberty National claims that, when it filed its answer on April 3, 2001, it believed that it could not invoke the rule of repose against the plaintiff-respondent Mr. Deas. Liberty National claims that its belief to this effect was warranted by a statement *958 in Oehmig v. Johnson, 638 So.2d 846, 851 (Ala.1994), which reads: "The time for the rule of repose cannot run until there is at least constructive notice of a potential claim." Liberty National claims that it was justified in maintaining this belief and in not invoking the rule of repose against Mr. Deas until this Court issued Ex parte Liberty National Life Insurance Co. (In re Hudson v. Liberty National Life Insurance Co.), 825 So.2d 758 (Ala.2002) (hereinafter "Liberty National (Hudson)"), which, Liberty National argues, "abrogated" Oehmig v. Johnson.
The very Liberty National (Hudson) now cited by Liberty National to us reveals, however, not only that Liberty National should have known, but that Liberty National actually did know, well before April 3, 2001, that the rule of repose was available to bar Mr. Deas's claims irrespective of whether or when he acquired notice of his claims. Liberty National (Hudson) reveals that, well before April 3, 2001, Liberty National knew and should have known that a claimant's lack of notice of his claim would not save his claim from the bar of the rule of repose. In several ways Liberty National (Hudson) reveals this state of knowledge in Liberty National.
First, Liberty National (Hudson) cites the case of Moore v. Liberty National Insurance Co., 108 F.Supp.2d 1266, 1274-75 (N.D.Ala.2000), aff'd sub nom. Moore v. Liberty National Life Ins. Co., 267 F.3d 1209 (11th Cir.2001) (boldface added), with the parenthetical explanation: "(applying Alabama's rule of repose to bar claims virtually identical to the claims asserted in this case)." 825 So.2d at 764. In Moore v. Liberty National, well before April 3, 2001, Liberty National successfully invoked the rule of repose to bar the Moore plaintiffs' Alabama state law claims based on acts committed more than 20 years before the Moore plaintiffs filed their suit, notwithstanding the Moore plaintiffs' lack of notice and lack of discovery of those claims and notwithstanding the existence of Oehmig v. Johnson and its language about notice and the rule of repose at the very time Liberty National was invoking the rule of repose against the Moore plaintiffs.
Second, in Liberty National (Hudson) itself, the Oehmig v. Johnson statement that "[t]he time for the rule of repose cannot run until there is at least constructive notice of a potential claim" did not deter Liberty National from invoking the rule of repose to bar the claims against Liberty National, even though the plaintiffs suing Liberty National in that case were, like the plaintiff suing Liberty National in the case now before us, claiming lack of notice or discovery of their own claims. The discussion of the rule of repose in Liberty National (Hudson) bespeaks that the parties to that case had already joined issue on the question of whether those plaintiffs' lack of notice or discovery of their own claims would save them from the rule of repose. Only after Liberty National had invoked the rule of repose notwithstanding those plaintiffs' lack of notice or discovery did this Court issue the Liberty National (Hudson) opinion "abrogating" (as Liberty National now says) the Oehmig v. Johnson language about notice. In the case now before us Liberty National could have and should have timely invoked the rule of repose just as it did in Moore v. Liberty National and Liberty National (Hudson), notwithstanding the language about notice in Oehmig v. Johnson, which preexisted all three casesMoore v. Liberty National, Liberty National (Hudson), and the case now before us.
Third, Liberty National (Hudson) cites precedents which predate April 3, 2001, *959 when Liberty National filed its answer in the case now before us, and which refute the notion that a claimant's lack of notice or discovery of his own claim would save it from the rule of repose. Liberty National (Hudson) cites Boshell v. Keith, 418 So.2d 89, 91 (Ala.1982), for the proposition that the rule of repose "is not based upon concepts of accrual, notice, or discovery." 825 So.2d at 764. Likewise, Liberty National (Hudson) quotes Ballenger v. Liberty National Life Insurance Co., 271 Ala. 318, 322, 123 So.2d 166, 169 (1960), for the proposition that "[l]ack of notice is not sufficient to avert the application of the doctrine of repose." 825 So.2d at 764. Likewise, Liberty National (Hudson) cites Merrill v. Merrill, 260 Ala. 408, 411, 71 So.2d 44, 45-46 (1954), with this parenthetical explanation: "(noting that `absence of notice' does not control the application for the rule [of repose], and that `[n]otice does have influence on the question of laches, but not on [repose]')." 825 So.2d at 764. All of these precedents were just as available to Liberty National when it filed its answer in the case now before us on April 3, 2001, when Liberty National should have pleaded the rule of repose, as these precedents were available to this Court when it issued Liberty National (Hudson) on January 18, 2002, and "abrogated" the notice language in Oehmig v. Johnson.
Fourth, Liberty National (Hudson) dismisses the notice language in Oehmig v. Johnson as mere "dicta" "which was not supported by citation to any authority." 825 So.2d at 765 n. 3. The status of the notice language in Oehmig v. Johnson as dictum and the absence of authority for that dictum were just as available to Liberty National on April 3, 2001, when it should have pleaded but did not plead the rule of repose in the case now before us, as the status as dictum and the absence of supporting authority were available to this Court on January 18, 2002, when it issued Liberty National (Hudson) "abrogating" that unsupported dictum.
Finally, the discussion of the rule of repose in Liberty National (Hudson) is itself dictum. Thus it could not change the law and thereby provide Liberty National with any basis for claiming that Liberty National was timely invoking a new rule by pleading the rule of repose after the issuance of Liberty National (Hudson).
The foregoing discussion demonstrates that, when Liberty National first answered on April 3, 2001 in the case now before us, Liberty National was already an old hand at invoking the rule of repose against plaintiffs who lacked notice or discovery of their own claims. Liberty National had already so defended itself both before Oehmig v. Johnson in Ballenger v. Liberty National and after Oehmig v. Johnson in Moore v. Liberty National and in Liberty National (Hudson).
On April 3, 2001, Liberty National was on notice of the law which not only allowed but also required that Liberty National then plead the rule of repose against Mr. Deas in order to preserve the bar to his claims. Liberty National cannot rightly claim that Liberty National (Hudson) was its epiphany on the topic of notice and the rule of repose, or is its salvation for its failure to plead the rule of repose timely in its original answer of April 3, 2001.
In Rector, supra, the plaintiff sought to amend her complaint seven months after she had filed it but some time before the defendant filed its motion for summary judgment. In the case now before us, Liberty National sought to amend its answer nearly twelve months after Liberty National had filed it and one month after Liberty National had filed its motion for summary judgment, which is still pending. In approving the trial judge's disallowance *960 of Rector's amendment, the Rector Court reasoned:
"In Boros v. Baxley, 621 So.2d 240 (Ala. 1993), we explained:
"`Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that "the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion."'
"621 So.2d at 245 (citations omitted). Thus, `Rule 15, [Ala. R. Civ. P.], is not carte blanche authority to amend a complaint at any time.' Stallings v. Angelica Uniform Co., 388 So.2d 942, 947 (Ala. 1980) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975)). `[U]ndue delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment.' Puckett, Taul & Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 984 (Ala.1989). `[I]f the court determines... that a party has had sufficient opportunity to state a claim ... but has failed to do so, leave to amend may properly be denied.' Walker v. Traughber, 351 So.2d 917, 922 (Ala.Civ.App. 1977)."
820 So.2d at 78 (emphasis added). While Rector's amendment was proffered within 30 days of the original trial date, the Rector Court did not base its approval of the disallowance of the amendment on any claim or finding of prejudice. The sole rationale was undue delay.[5]
What is sauce for the goose is sauce for the gander. The trial judge in the case now before us did not exceed his discretion in denying, on the ground of undue delay, the March 21, 2002 motion filed by Liberty National seeking leave to amend its answer. Thus, I respectfully submit that we should deny the writ.
LYONS, J., concurs.
NOTES
[1] In Ex parte Liberty National, we discussed the history of the rule of repose and returned, through clarification, to the traditional meaning of the rule; namely, that "the 20-year period begins to run against claims the first time those claims could have been asserted, regardless of the claimant's notice of a claim." 825 So.2d at 764 (footnotes omitted).
[2] See Harkins & Co. v. Lewis, 535 So.2d 104, 117 (Ala.1988).
[3] A comparison of the language of Rule 15 "and leave shall be given only upon a showing of good cause"with the alternative phrase "and leave shall be given upon a showing of good cause" demonstrates the point.
[4] In Ex parte Liberty National, 825 So.2d at 764 n. 3, we abrogated the "constructive notice" statement from Oehmig:

"This statement, which was not supported by citation to any authority, is inconsistent with the well-established understanding of the rule of repose described above. Furthermore, Oehmig was not decided on the basis of this incorrect statement; rather, Oehmig was decided on the basis that the rule of repose could not be used offensively (in a manner similar to the concept of adverse possession) `against one with valid record title by one who clearly does not have title' in order to divest the title owner of property. 638 So.2d at 850. For those reasons, the dicta from Oehmig does not control our decisions."
[5] Rector seems to conflict with Poston v. Gaddis, 372 So.2d 1099, 1105-06 (Ala.1979), which, in turn, seems to support the main opinion in the case now before us. This Court may need to resolve the conflict to achieve consistency.