I respectfully dissent. The validity of the main opinion depends on two of its cardinal holdings. The first of these holdings is that Liberty National has demonstrated "good cause" for its failure to plead the rule of repose in its original April 3, 2001 answer. The second of these holdings is that the trial judge exceeded his discretion in denying, on the ground of "undue delay," the March 21, 2002 motion filed by Liberty National for leave to amend its answer to assert the rule of repose. I respectfully submit that both of these holdings are mistaken.
This dissent will demonstrate, first, that the excuse proffered by Liberty National for its failure to plead the rule of repose in the original April 3, 2001 answer is absolutely illusory. This dissent will demonstrate, second, that the holding of the main opinion on the issue of untimeliness conflicts with the holding by this Court on the same issue in the recent case of Rector v. Better Houses, Inc., 820 So.2d 75 (Ala. 2001). Under circumstances not materially distinguishable from the circumstances of the case now before us, Rector holds that seven months' delay in seeking to amend a pleading constituted such undue delay as was "in itself ground for denying an amendment." 820 So.2d at 78. The delay in the case now before us was nearly a full year.
In petitioning us for a writ of mandamus, Liberty National claims that, when it filed its answer on April 3, 2001, it believed that it could not invoke the rule of repose against the plaintiff-respondent Mr. Deas. Liberty National claims that its belief to this effect was warranted by a statement *Page 958 
in Oehmig v. Johnson, 638 So.2d 846, 851 (Ala. 1994), which reads: "The time for the rule of repose cannot run until there is at least constructive notice of a potential claim." Liberty National claims that it was justified in maintaining this belief and in not invoking the rule of repose against Mr. Deas until this Court issued Ex parte LibertyNational Life Insurance Co. (In re Hudson v. Liberty National LifeInsurance Co.), 825 So.2d 758 (Ala. 2002) (hereinafter "Liberty National(Hudson)"), which, Liberty National argues, "abrogated" Oehmig v.Johnson.
The very Liberty National (Hudson) now cited by Liberty National to us reveals, however, not only that Liberty National should have known, but that Liberty National actually did know, well before April 3, 2001, that the rule of repose was available to bar Mr. Deas's claims irrespective of whether or when he acquired notice of his claims. Liberty National(Hudson) reveals that, well before April 3, 2001, Liberty National knewand should have known that a claimant's lack of notice of his claim would not save his claim from the bar of the rule of repose. In several waysLiberty National (Hudson) reveals this state of knowledge in Liberty National.
First, Liberty National (Hudson) cites the case of Moore v. LibertyNational Insurance Co., 108 F. Supp.2d 1266, 1274-75 (N.D.Ala. 2000), aff'd sub nom. Moore v. Liberty National LifeIns. Co., 267 F.3d 1209
(11th Cir. 2001) (boldface added), with the parenthetical explanation: "(applying Alabama's rule of repose to bar claims virtually identical to the claims asserted in this case)." 825 So.2d at 764. In Moore v. LibertyNational, well before April 3, 2001, Liberty National successfully invoked the rule of repose to bar the Moore plaintiffs' Alabama state law claims based on acts committed more than 20 years before the Moore
plaintiffs filed their suit, notwithstanding the Moore plaintiffs' lack of notice and lack of discovery of those claims and notwithstanding the existence of Oehmig v. Johnson and its language about notice and the rule of repose at the very time Liberty National was invoking the rule of repose against the Moore plaintiffs.
Second, in Liberty National (Hudson) itself, the Oehmig v. Johnson
statement that "[t]he time for the rule of repose cannot run until there is at least constructive notice of a potential claim" did not deter Liberty National from invoking the rule of repose to bar the claims against Liberty National, even though the plaintiffs suing Liberty National in that case were, like the plaintiff suing Liberty National in the case now before us, claiming lack of notice or discovery of their own claims. The discussion of the rule of repose in Liberty National(Hudson) bespeaks that the parties to that case had already joined issue on the question of whether those plaintiffs' lack of notice or discovery of their own claims would save them from the rule of repose. Only after Liberty National had invoked the rule of repose notwithstanding those plaintiffs' lack of notice or discovery did this Court issue the LibertyNational (Hudson) opinion "abrogating" (as Liberty National now says) theOehmig v. Johnson language about notice. In the case now before us Liberty National could have and should have timely invoked the rule of repose just as it did in Moore v. Liberty National and Liberty National(Hudson), notwithstanding the language about notice in Oehmig v.Johnson, which preexisted all three cases — Moore v. LibertyNational, Liberty National (Hudson), and the case now before us.
Third, Liberty National (Hudson) cites precedents which predate April 3, 2001, *Page 959 
when Liberty National filed its answer in the case now before us, and which refute the notion that a claimant's lack of notice or discovery of his own claim would save it from the rule of repose. Liberty National(Hudson) cites Boshell v. Keith, 418 So.2d 89, 91 (Ala. 1982), for the proposition that the rule of repose "is not based upon concepts of accrual, notice, or discovery." 825 So.2d at 764. Likewise, LibertyNational (Hudson) quotes Ballenger v. Liberty National Life InsuranceCo., 271 Ala. 318, 322, 123 So.2d 166, 169 (1960), for the proposition that "[l]ack of notice is not sufficient to avert the application of the doctrine of repose." 825 So.2d at 764. Likewise, Liberty National(Hudson) cites Merrill v. Merrill, 260 Ala. 408, 411, 71 So.2d 44, 45-46
(1954), with this parenthetical explanation: "(noting that `absence of notice' does not control the application fo the rule [of repose], and that `[n]otice does have influence on the question of laches, but not on [repose]')." 825 So.2d at 764. All of these precedents were just as available to Liberty National when it filed its answer in the case now before us on April 3, 2001, when Liberty National should have pleaded the rule of repose, as these precedents were available to this Court when it issued Liberty National (Hudson) on January 18, 2002, and "abrogated" the notice language in Oehmig v. Johnson.
Fourth, Liberty National (Hudson) dismisses the notice language inOehmig v. Johnson as mere "dicta" "which was not supported by citation to any authority." 825 So.2d at 765 n. 3. The status of the notice language in Oehmig v. Johnson as dictum and the absence of authority for that dictum were just as available to Liberty National on April 3, 2001, when it should have pleaded but did not plead the rule of repose in the case now before us, as the status as dictum and the absence of supporting authority were available to this Court on January 18, 2002, when it issued Liberty National (Hudson) "abrogating" that unsupported dictum.
Finally, the discussion of the rule of repose in Liberty National(Hudson) is itself dictum. Thus it could not change the law and thereby provide Liberty National with any basis for claiming that Liberty National was timely invoking a new rule by pleading the rule of repose after the issuance of Liberty National (Hudson).
The foregoing discussion demonstrates that, when Liberty National first answered on April 3, 2001 in the case now before us, Liberty National was already an old hand at invoking the rule of repose against plaintiffs who lacked notice or discovery of their own claims. Liberty National had already so defended itself both before Oehmig v. Johnson in Ballenger v.Liberty National and after Oehmig v. Johnson in Moore v. LibertyNational and in Liberty National (Hudson).
On April 3, 2001, Liberty National was on notice of the law which not only allowed but also required that Liberty National then plead the rule of repose against Mr. Deas in order to preserve the bar to his claims. Liberty National cannot rightly claim that Liberty National (Hudson) was its epiphany on the topic of notice and the rule of repose, or is its salvation for its failure to plead the rule of repose timely in its original answer of April 3, 2001.
In Rector, supra, the plaintiff sought to amend her complaint seven months after she had filed it but some time before the defendant filed its motion for summary judgment. In the case now before us, Liberty National sought to amend its answer nearly twelve months after Liberty National had filed it and one month after Liberty National had filed its motion for summary judgment, which is still pending. In approving the trial judge's disallowance *Page 960 
of Rector's amendment, the Rector Court reasoned:
 "In Boros v. Baxley, 621 So.2d 240 (Ala. 1993), we explained:
 "`Although Rule 15(a) itself calls for liberal amendment, this Court has held consistently that "the grant or denial of leave to amend is a matter that is within the discretion of the trial court and is subject to reversal on appeal only for an abuse of discretion."'
 "621 So.2d at 245 (citations omitted). Thus, `Rule 15, [Ala.R.Civ.P.], is not carte blanche authority to amend a complaint at any time.' Stallings v. Angelica Uniform Co., 388 So.2d 942, 947 (Ala. 1980) (quoting Stead v. Blue Cross-Blue Shield of Alabama, 294 Ala. 3, 6, 310 So.2d 469, 471 (1975)). `[U]ndue delay in filing an amendment, when it could have been filed earlier based on the information available or discoverable, is in itself ground for denying an amendment.' Puckett, Taul Underwood, Inc. v. Schreiber Corp., 551 So.2d 979, 984 (Ala. 1989). `[I]f the court determines . . . that a party has had sufficient opportunity to state a claim . . . but has failed to do so, leave to amend may properly be denied.' Walker v. Traughber, 351 So.2d 917, 922
(Ala.Civ.App. 1977)."
820 So.2d at 78 (emphasis added). While Rector's amendment was proffered within 30 days of the original trial date, the Rector Court did not base its approval of the disallowance of the amendment on any claim or finding of prejudice. The sole rationale was undue delay.[5]
What is sauce for the goose is sauce for the gander. The trial judge in the case now before us did not exceed his discretion in denying, on the ground of undue delay, the March 21, 2002 motion filed by Liberty National seeking leave to amend its answer. Thus, I respectfully submit that we should deny the writ.
LYONS, J., concurs.
[5] Rector seems to conflict with Poston v. Gaddis, 372 So.2d 1099,1105-06 (Ala. 1979), which, in turn, seems to support the main opinion in the case now before us. This Court may need to resolve the conflict to achieve consistency.